JOSEPH S. MOUNT, administrator, appellant,

*v.*

GEORGE VAN NESS, respondent.

An ancestor bought certain lands, and, by his deed, assumed to pay a mortgage thereon, and its amount was allowed to him as so much of the purchase-money. *Held,* that this was not such personal assumption of the mortgage as entitled the heir, to whom the premises descended, to exoneration out of the personal estate for the amount of the mortgage.

---

Appeal from decree of Mercer orphans court. On state of the case.

Mount *v.* Van Ness.

*Messrs. A. G. Richey* and *G. D. W. Vroom,* for appellants.

*Mr. James Wilson,* for respondent.

THE ORDINARY.

The question presented for adjudication is whether the heir at law is entitled to exoneration out of the personal estate for the amount of the mortgage on the land descended, subject to which the ancestor bought it, and which he assumed in the deed to him to pay, and the amount whereof was allowed to him as so much of the purchase-money. The orphans' court held that it was not, and hence the appeal. I consider myself bound, in deciding this question, by the decision in *McLenahan* v. *McLenahan, 3 C. E. Gr. 101,* which was followed in *Campbell* v. *Campbell, 3 Stew. Eq. 415.* In the former case it was held that if land descends, or is devised, subject to a mortgage debt not created by the decedent, the heir or devisee takes the property *cum onere,* and is not entitled to have the debt paid out of the personal estate, unless the decedent has directly assumed the debt, intending to make it a charge on his personal estate, or shall have so expressly directed by the will; and that it is not enough that he has assumed to pay the debt, or has rendered himself liable to be called on directly by the creditor to pay it. It is urged, however, that the decision in that case, so far as it seems to govern this, is a mere *obiter dictum;* or, if not, is based on a different state of facts; that it does not appear there, as it does here, that the decedent assumed the payment of the mortgage debt. It did appear that the amount of the mortgage was retained by him out of the purchase-money, and therefore that his personal estate had had the benefit of it; that is, that his personal estate was so much more than it would have been had the whole of the purchase-money been paid. It also appears, by the report, that application was made on the hearing for leave to amend the bill by adding an allegation that the decedent, at the time of the conveyance to him, verbally promised his grantor to pay the debt. Such an assumption would have been valid, and might have been enforced. *Belles* v. *Beach, 2 Zab. 680; Wilson* v. *King, 8 C. E. Gr. 150.*

But the chancellor said that the proposed amendment would not affect the result. His mind was drawn to the very question before me, and he was dealing with an application (not denied, but for the sake of the argument and decision admitted) to infuse into the case the very ingredient which is said to distinguish it from that under consideration. It was, therefore, necessary to the adjudication upon the rights of the parties before him, to consider the case as if it possessed that element. The weight of authority is in accordance with that decision. In order to an exoneration of the land by throwing the burden on the personal estate, it must appear that the decedent has not only made himself answerable for the payment of the mortgage, but has directly and absolutely made the debt his own, or has in some other way manifested an intention to throw the burden on the personalty in ease of the land. And this doctrine is based on principle. In *Cumberland* v. *Codrington, 3 Johns. Ch. 229,* Chancellor Kent, after reviewing the English cases on the subject, says: "The series of cases which I have thus examined, shows very conclusively that by the English equity system, as it has been declared and received for the last thirty or forty years, the purchase of the equity of redemption, with a covenant of indemnity to the mortgagor against the mortgage debt, did not make the debt the grantee's own, so as to render his personal assets the primary fund to pay it. The cases all agree that no covenant with the mortgagor is sufficient for that purpose. There must be a direct communication and contract with the mortgagee, and even that is not enough unless the dealing with the mortgagee be of such a nature as to afford decided evidence of an intention to shift the primary obligation from the real to the personal fund." Again, he says: "When a man gives a bond and mortgage for a debt of his own contracting, the mortgage is understood to be merely a collateral security for the personal obligation. But when a man purchases, or has devised to him land with an encumbrance on it, he becomes a debtor only in respect to the land; and if he promises to pay it, it is a promise rather on account of the land, which continues, notwithstanding, in many cases, to be the primary fund. The same equity which in other cases makes the

Mount *v.* Van Ness.

personal estate contribute to ease the land as between the real and personal representatives, will here make the land relieve the personal estate. There is good sense and justice in the principle, and I feel the force of the doctrine that it requires very strong and decided proof of intention to shift the natural course and order of obligation between the two estates." The question is not whether the decedent assumed to pay the mortgage, and so made himself liable therefor, as between him and his grantor, but whether he, by direct action, made himself liable, in his personal estate, to the mortgagee; that is, as between him and the mortgagee, expressly made the debt his own debt.

The mere assumption to pay the mortgage on the land, if made by the grantee to the grantor, is at most an indemnity merely; and though, if the grantor be personally liable for the payment of the mortgage, the mortgagee may, in equity, pursue the grantee on his assumption, that, however, is because, and only because, the mortgagee is, in equity, entitled to the benefit of all collateral securities which his debtor has taken for the mortgage debt. *Klapworth* v. *Dressler, 2 Beas. 62; Norwood* v. *De Hart, 3 Stew. Eq. 412; Crowell* v. *Hosp. of St. Barnabas, 12 C. E. Gr. 650.* And if the grantor is not personally liable for the mortgage debt, the mortgagee cannot look to the grantee, personally, at all; because the assumption is but an indemnity, and the grantor not being liable, the indemnity, is practically a mere nullity. *Crowell* v. *Hosp. of St. Barnabas, ubi sup.; Norwood* v. *De Hart, ubi sup.; King* v. *Whitely, 10 Paige 465; Trotter* v. *Hughes, 12 N. Y. 74.* Nor does the fact that the grantee obtained the benefit of the mortgage by having the amount allowed to him as part of the purchase-money, make any difference. The purchase-money was payable to his grantor, and the assumption is to him, and in his favor. The fact of the allowance to the grantee of the amount of the mortgage as part of the purchase-money, merely raises in equity, an obligation on his conscience to indemnify his grantor. *Tichenor* v. *Dodd, 3 Gr. Ch. 454.* In that case, the suit was by the grantor, who was the obligor in the bond secured by the mortgage, and who had been compelled to pay deficiency against his grantee. The property

was conveyed to the latter, subject to the mortgage, the amount being allowed to him as part of the consideration of the conveyance. Obviously, the fact that the mortgagee may, in equity, avail himself of the assumption for the payment of his debt, does not make the assumption any more than a mere indemnity. It is on the ground that it is an indemnity that the mortgagee claims the benefit of it. "It is immaterial," says Mr. Jarman, "whether the covenant with the vendor be to pay the debt, or indemnify him against it. But if the mortgagee be a party to the transaction, the vendee covenanting with him to pay the debt, and the estate be subjected to a fresh proviso for redemption, it will be considered, with respect to the purchaser's representatives, as a purchase of the whole estate, and not of the equity of redemption, merely; and the same principle, of course, applies where, upon the purchase, the mortgage is transferred to a new mortgagee, who advances a further sum of money." *2 Jarm. on Wills* 559, 560; see, also, *Ram on Assets* 441, 442. "Where a person," says Judge Story, "becomes entitled to an estate, subject to a charge, and then covenants to pay it, the charge still remains primarily on the real estate, and the covenant is only a collateral security, because the debt is not the original debt of the covenantor." *2 Story's Eq. Jur.* § *1248*; see, also, §§ *1248 a, 1248 b, 1248 c.* In *McLearn* v. *McLellan, 10 Pet. 625*, a testator had suffered a judgment against him, which, in the state where it was entered, bound both his personal and real estate for part of the purchase-money of a rice plantation. He gave, by his will, the plantation and his personal property to his son. The latter, to obtain possession, gave his bond and a mortgage on the property, real and personal, for an unpaid balance due on the judgment. It was held that the bond and mortgage did not create, and were not intended to create, any new lien on the personal property, and therefore threw no additional burden on the personal estate. But it is unnecessary to discuss the subject further. The doctrine has not only the sanction of principle and frequent and authoritative precedent, but has, in England and New York, at least, had the approval of legislative enactment.

The decree of the orphans' court will therefore be affirmed, with costs.