WALTER Z. MARX, Appellee, *vs.* WILLIAM H. OLIVER,
Appellant.

*Opinion filed October 28, 1910.*

1. SPECIFIC PERFORMANCE—*a purchaser of real estate is charge-
able with notice of obvious conditions.* A purchaser of real estate
is chargeable with constructive knowledge of all facts and condi-
tions which are obvious or which might have been known to him
if he had exercised proper diligence.

2. SAME—*what changes in building are not breach of contract
of sale.* Where the plans and specifications of a building, about
four-fifths completed at the time a contract for the sale was made,
reserve to the owner the right to make alterations and changes,
such changes as had been made prior to the contract of sale and
of which the purchaser might have learned by examination of the
building had he availed himself of his opportunities do not consti-
tute a breach of the contract by which the vendor agreed to "com-
plete" the building according to the plans and specifications.

3. SAME—*what changes in building cannot be made after con-
tract of sale.* An agreement in a contract for the sale of an un-
finished building to complete the building according to the plans
and specifications is a waiver by the vendor of the right to ex-
ercise, after the date of the contract of sale, the right to make
changes which was reserved to him in the specifications, and after
the contract of sale is made the vendor must do the remainder of
the work necessary to complete the building, according to the plans
and specifications.

4. SAME—*when changes cannot be made though agreed upon
before contract of sale.* After a contract for the sale of an un-
finished building, to be completed according to the plans and speci-
fications, has been made, the vendor has no right to make changes
which had been previously agreed upon between himself and con-
tractors, where the vendee had no notice of such intended changes,
and could not, because of their character and the fact that the
building had not reached the stage when they could be made, have
learned of such changes at the time the contract was made.

5. SAME—*what constitutes extension of time for performance.*
Where the vendor tells the vendee's agent, when leaving him on
the day agreed upon for paying the money and giving the deed,
that the deed can be found at his office the following day if the
vendee concludes to waive his objections, such conduct and state-

ment amount to an extension of time by the vendor for closing up the contract on the following day.

6. SAME—*when decree is not erroneous in requiring vendee to pay interest.* Where a decree of specific performance against the vendor requires the vendor to account for the rental value of the building from the date the contract should have been performed by him until the date of the decree, it is not error to require the vendee to pay interest upon the purchase money from the date the contract should have been performed to the time it was paid to the clerk of the court for the vendor's use.

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

DEWITT C. JONES, and MAYER, MEYER, AUSTRIAN & PLATT, for appellant.

FREDERICK Z. MARX, for appellee.

Mr. CHIEF JUSTICE VICKERS delivered the opinion of the court:

This is an appeal from a decree for the specific performance of a contract for the sale of real estate, rendered by the circuit court of Cook county.

On July 9, 1907, William H. Oliver, being the owner of lot 3 in block 30, in School Section addition to Chicago, entered into a contract with the firm of Morrice & Barron for the construction of a four-story and basement building thereon, according to certain plans and specifications. The contractors proceeded to erect the building, and on September 19 the building was enclosed, the walls up, the roof on and the floors all laid, and the plumbing was all roughed in and the cement floor in the basement was being put in, and they were getting ready to put the elevators in place. The building was substantially four-fifths completed on that day. On said day appellant, Oliver, entered into a written contract of sale with Walter Z. Marx, appellee, by which

Oliver agreed to complete said building according to the plans and specifications (which were made a part of the contract) within sixty days, and in addition to the requirements of the plans and specifications he also agreed to install in said building an electric freight elevator of approved design and a triplex pump and water tank in the basement of said premises. Appellant agreed to make and deliver a good and sufficient warranty deed conveying said property to appellee free and clear of all liens and encumbrances and to clear said building of all mechanics' liens. The consideration for the sale was $50,000, $2000 of which was paid in cash as earnest money when the contract was executed and $18,000 more was to be paid upon delivery of the deed, and the balance was divided into two payments of $15,000 each, one to be made in two years and the other in five years, bearing interest at the rate of five and one-half per cent and secured by a trust deed on the property sold. The $2000 cash was paid to appellant at the time the contract was executed.

When the plans and specifications as originally made were submitted to contractors for bids, appellant was unable to secure a bid under $33,000 for the erection of the building, which was more money than he desired to put into the building. He had the architect go over the plans and specifications and make a number of material changes, which were noted in addenda to the plans and specifications. As thus modified appellant was able to contract for the erection of the building for $29,000. The plans and specifications contained a provision by which the "owner reserved the right, after conferring with the architect, to alter or modify the design and to add to or diminish from the contract price for such alterations, the architect being at liberty to make any such alterations in the plans, form, construction, detail or execution described by the drawings and specifications without invalidating or rendering void the contract." After the contract for the erection of the

building had been let, and while the work was in progress, other changes were made in the building by consent of the contractors and the architect in charge of the work. Some of these changes had been actually made, and others had been determined upon but had not been made owing to the incomplete condition of the building. At the time the contract which is the basis of the bill filed in this case was entered into, appellee had not made a careful examination of the building. In fact, the only examination that had been made was simply looking at the building on the outside. Appellee entered into the contract relying upon the plans and specifications as to the character of the building that was to be constructed. These plans and specifications did not show any of the changes except those noted in the addenda at the time the appellee's architect examined them. After the contract of sale was entered into, appellee employed Mr. Hansen, an architect, to watch after the progress of the building and see that it was finished in accordance with the plans and specifications. Mr. Hansen made his first careful examination of the building on the 26th and 27th of September, after the contract of sale had been executed. He did not at that time point out any objections to the building or find any fault with the manner in which the work was being done. Mr. Hansen was in the building two or three times each week until it was finally completed. Some important changes were made after the execution of the contract, in accordance with Mr. Hansen's directions.

On November 11, 1907, appellant notified appellee that the building was complete according to the plans and specifications and that he desired to close the matter up and make a final settlement according to the terms of the contract. He also informed appellee that he would expect $18,000 in cash on the day that the transaction was closed. In reply to this, Mr. Hansen, the architect, wrote appellant that he could not accept the building as complete under the plans and specifications until he saw the electric elevator tested

and also the water pump and steam apparatus, and he requested appellant to put it all into business and notify him and he would call and see it work.  In this letter Mr. Hansen said: "If satisfactory and with contractor's usual guarantee to rectify possible defects promptly, I will accept and issue certificate promptly."  Koester & Zander, real estate agents, who represented appellee in this transaction, also wrote appellant a letter in answer to his of November 11, in which they say that appellee's attorney had advised that it was appellant's duty to put in such electric connections as were necessary to make the elevator and pump operate. On November 12 it was agreed between the appellant and Mr. Hansen that the final test of the heating plant would be made on the following Monday.  Some attempt was made at a test on the day fixed but the parties disagreed as to the result, Mr. Hansen claiming that the test was unsatisfactory while appellant claimed that it showed the heating plant to be all right.

On the 18th of November the parties met for the purpose of trying to close up the transaction.  They failed to agree, and other meetings were had with like result.  On November 21 appellee wrote appellant, stating in detail the particulars in which he claimed the appellant had failed to comply with his contract.  In his letter appellee notified appellant to procure from the city authorities certificates of approval of the electric elevator, doors in shaft, tank and motor pump; also a like certificate of approval of the steam boiler, fire escape, plumbing and sewerage and the window cleaning device, and also a certificate of acceptance from the board of underwriters accepting the metal windows.  He also pointed out a number of changes in the building which he insisted should be made to make it conform to the plans and specifications referred to in the contract.  At a conference held between the parties on the day this letter was delivered to appellant it was agreed that the time for fulfilling the contract should be extended to four o'clock in

the afternoon of November 25, and an endorsement to that effect was made on the contract and signed by the parties. On November 23 appellant replied to appellee's letter of the 21st, in which he repeated his claim that the building was substantially completed in accordance with the plans and specifications. Appellant, while protesting that he was under no obligation to comply with any of the requirements contained in appellee's letter, expressed a willingness to do some of the things therein required in the hope of closing up the transaction without further delay, and promised to have everything ready for inspection on November 25, and expressed the desire to close the matter up finally between the hours of 2:00 and 4:00 P. M. at the office of Baird & Warner, and gave notice that he would then tender a warranty deed for the property and demand the balance of the purchase money and the notes and trust deed for the deferred payments. Appellant made some changes in the building, some of which were specified in appellee's letter of the 21st and others were matters to which no objection had been made.

The parties met on the 25th, at Baird's office. There were present on that occasion, appellant, Jones, (appellant's attorney,) Woodcock and Baird. Baird represented appellee. Baird had a list of the things mentioned in the letter of the 21st which were to be done, and appellant had a list of the things that he had done after receiving appellee's letter. Upon checking the lists it was found that of the items on appellant's list only two or three were found on appellee's list. Baird asked appellant about the certificates of inspection. Appellant replied that he did not think it was his duty to furnish them. He told Baird, however, that the city had passed on and approved the several matters contained in appellee's list. Appellant then tendered a warranty deed to Baird and demanded the consideration. Baird handed the deed back to appellant, and appellant said, "Then you refuse to close this transaction?" to which Baird

replied, "No; I simply cannot go on with it until you have
fulfilled the terms of the contract, which includes furnish-
ing those certificates and finishing the building." Baird also
informed appellant that he had the money and notes and
trust deed, and was ready to close up the transaction as
soon as Oliver had complied with the contract on his part.
As appellant and his attorney were about to leave the office
Baird asked him where the deed could be found in case
the purchaser should conclude to waive the objections to
the building and accept it. Appellant replied that the deed
could be found at "my place of business, 203 South Des-
plaines street." Appellant did not offer to give Baird any
of the certificates of inspection. On November 26 appel-
lant wrote to Koester & Zander, advising them that appel-
lee had failed to comply with his contract relative to the
purchase of his property and requested the return of the
abstract of title, and on the same day wrote to appellee de-
manding the return of all waivers of lien, affidavits and
other documents delivered to him during the negotiations
for the purchase of the property. On the afternoon of No-
vember 26 Baird went to appellant's office and informed
appellant that he had come over to close up the transaction;
that Mr. Marx was willing to waive all of the objections
that he had made and close up the contract. Appellant re-
plied that "you are twenty-four hours too late." During
the conversation on this occasion appellant told Baird that
he had the certificates of inspection and that they were in
his possession the day before. Baird asked him why he
had not given them up the day before and saved all this
trouble, and appellant said that he did not think he had to
do so but that he intended to deliver them after the trans-
action was closed.

The master in chancery to whom this cause was referred
found that it was appellant's duty to produce the certificates
of inspection and approval called for by appellee's letter of
November 21, and that there was a failure to comply with

the contract in this respect, which constituted a material breach of the contract. The master also found that the changes in the specifications made by the appellant, though proper as between himself and the building contractors, did not alter appellant's obligation to appellee to have the building completed in accordance with the plans and specifications; that the building was not so completed in the following particulars: (*a*) The ceiling underneath the stairs was omitted. The cost of this item was $112. (*b*) The rear door on the first-floor stair hall did not have metal-covered frames with asbestos pads between the metal and wood, and wire glass. The cost was $27.50. (*c*) Wash bowls were substituted for a wash sink on each floor. This item increased the cost to appellant $17.50. (*d*) The whitewash and cold water paint on certain parts of the building was not properly done. The expense of this omission was $119.40. (*e*) No drain basin was built as provided for in the plans and specifications. (*f*) The two-inch pine bulkhead was left out. (*g*) No satisfactory test of the heating plant had been made and no bond for $1000 to secure a proper and further test in cold weather had been given. The master also found that the provision in the contract making time the essence thereof had been waived by the conduct of the parties and that appellant was in default on November 25, and that being so in default he could not declare the contract forfeited on the 26th; that when appellee offered to waive all objections and accept the building it was appellant's duty to deliver the deed and close the contract. The master found the equities to be with appellee and recommended a decree for specific performance, and that appellant should be required to execute a good and sufficient warranty deed to said premises, free and clear of all liens and encumbrances, upon appellee paying or tendering to him $18,000 in cash and interest at five and one-half per cent per annum on $30,000 from November 26, 1907, to the date of the decree, less the rental value of the prem-

ises at $4000 a year. These findings of the master were approved by the court and a decree rendered in accordance therewith, with the additional requirement that the appellee should pay interest on the $18,000 from November 26 until the date of the decree, when the $18,000 was paid to the clerk of the court for appellant's use. Appellee has assigned a cross-error on that portion of the decree requiring him to pay interest on the $18,000.

It is apparent from the foregoing statement that the principal controversy between the parties grows out of a difference in the interpretation of the contract in respect to appellant's right to make changes in the building in accordance with the clause relating to that subject in the plans and specifications. Appellant contends that he had a right' to make changes in the building either before or after the sale contract, because that right was specifically reserved in the plans and specifications, which were in their entirety made a part of the sale contract. On the other hand, appellee contends that, he having purchased the property with the agreement that the building was to be finished "according to the plans and specifications," he has a right to demand that the plans and specifications shall be followed literally, and that appellant was required, under the sale contract, to tender him a building constructed substantially according to the plans and specifications.

We are of the opinion that both parties claim more than they are entitled to under the contract. Appellant undoubtedly had the right to make any changes he desired in the construction of the building prior to the date of the sale contract, and such changes as were actually made prior to the date of the sale contract cannot be objected to by appellee, even though he did not know, at the time he bought the building, that such changes had been made. He knew that under the plans and specifications appellant had the right to make such changes since it was plainly provided for in the plans and specifications, which were in his hands sev-

eral days before the sale contract was executed, and if he
bought the property without making any examination of
the building or any inquiry as to whether any changes had
been made, the fact that changes had been made prior to
the date of the sale contract would not constitute a breach
of the contract on the part of appellant which would jus-
tify appellee in refusing to carry out the contract. It is
not claimed that appellant made any representations what-
ever concerning the manner in which the plans and specifi-
cations had been followed, nor is it claimed that any fraud
or artifice was used by appellant to prevent appellee from
making a personal examination of the building before the
sale contract was executed. There being neither fraud nor
warranty on appellant's part we think the maxim of *caveat
emptor* applies, and if appellee is disappointed in his expec-
tations because of changes which were made in accordance
with the plans and specifications, it is due to his negligence
in failing to examine the building before he purchased it, or
his failure to protect himself by a warranty that the con-
struction of the building to the date of the contract was in
accordance with the plans and specifications. A purchaser
of real estate is chargeable with constructive knowledge
of all facts which are obvious or which might have been
known by a proper diligence. (*Tilley* v. *Bridges,* 105 Ill.
336.) It is to be noted in this connection that in the sale
contract appellant agreed to "complete" the building ac-
cording to the plans and specifications. The word "com-
plete" refers to the work necessary to finish the building
and has no reference to what had already been done. We
are, however, of the opinion that after appellant entered
into the sale contract he had no right thereafter to depart
from the plans and specifications. After he sold the prem-
ises, with an agreement on his part to complete the build-
ing according to the plans and specifications, he could not
thereafter depart from the plans and specifications under
his reserved right to make such changes. His agreement

to complete the building according to the plans and specifications was, in effect, a surrender of his right to make any substantial changes thereafter. Any departure from the plans and specifications after the 19th day of September by appellant without appellee's consent would constitute a breach of the sale contract on appellant's part.

There is another class of changes which do not fall strictly under the head of changes made before the contract of sale or changes made after the contract of sale. These are such changes as appellant and the building contractors had agreed upon before the sale contract but which had not been made at that time for the reason that the construction had not reached a stage requiring the making of such changes. An illustration of this class of changes or omissions is the ceiling underneath the stairs. The plans and specifications provide for the ceiling of all the space underneath the stairs. The evidence shows that before the sale contract was made appellant and the contractors had agreed to leave the ceiling underneath the stairway out, which would reduce the cost of the building $112. The ceiling underneath the stairway was a part of the carpenter work and could have been done at any time. The fact that the ceiling had not been put in at the time the sale contract was made would be no indication that that work had been abandoned. The omission of this item, as well as several others of like character, was determined upon by a private agreement between the contractors and appellant, of which appellee had no notice at the time he purchased, nor was there anything in the physical condition of the building which would have apprised him of the intention to omit these items had he made a careful inspection of the building before he purchased it. As to this class of changes we are of the opinion that appellee was not bound by the private understanding between appellant and the contractors, and that it was appellant's duty, under his contract with appellee, to ceil underneath the stairway notwithstanding

his private agreement with the contractors that such work should be omitted.

Under this construction of the contract appellant was in default and could not therefore declare the contract forfeited. We agree with the court below that while time was made of the essence of this contract in the first instance, the parties by their contract extended the time until four o'clock on the 25th of November. We are also of the opinion that appellant gave a further extension of time on the 25th by telling Mr. Baird that the deed could be found at his office if appellee concluded to waive his objections. We think it was fairly to be inferred from what he said that he would close the matter up if appellee would waive all objections within a reasonable time. The next day at four o'clock was not an unreasonable length of time to allow Mr. Baird to consult with appellee and determine what course he would take. There was no error committed in decreeing a specific performance of this contract.

Appellee insists that the court erred in requiring him to pay interest on the $18,000 from the 26th day of November until the money was paid into court for appellant's use. We do not think there was any error in this ruling. Appellant was required to account for rents upon the building from the day the transaction should have been closed. The theory of the decree is that appellee was entitled to the building and appellant to the purchase money on the day that the transaction should have been closed. Under this view appellant was entitled to interest on the $18,000 and appellee was entitled to the income from the property.

We find no error in this record. The decree of the circuit court of Cook county will be affirmed.

*Decree affirmed.*