27 Ill. App.3d 967 (1975)
326 N.E.2d 773
SAM YONAN et al., Plaintiffs-Appellees,
v.
OAK PARK FEDERAL SAVINGS AND LOAN ASSOCIATION et al., Defendants-Appellants.
No. 60269.
Illinois Appellate Court  First District (4th Division).
April 9, 1975.
*968 *969 McDermott, Will, & Emery, of Chicago (Hamilton Smith and Charles J. Averbook, of counsel), for appellants.
Canel & Canel, of Chicago (Jay A. Canel, of counsel), for appellees.
Judgment affirmed.
Mr. JUSTICE ADESKO delivered the opinion of the court:
This is the second appeal in this case and arises out of a contract entered into by and between the plaintiffs-appellees-cross-appellants (hereinafter plaintiffs) and the defendant-appellant-cross-appellee, Oak Park Federal Savings and Loan Association (hereinafter Oak Park). The facts pertinent to the contract negotiations and formulation of the contract are sufficiently set forth in our prior decision, Yonan v. Oak Park Federal Savings and Loan Association, 4 Ill. App.3d 754, 281 N.E.2d 700 (1972), and need not be reiterated here. Suffice it to say that by the terms of the contract the plaintiffs were to exchange two pieces of real estate, one improved with a two-story building containing 4,500 square feet, for a parcel of land owned by Oak Park. Oak Park was to improve the parcel of land it was exchanging with a 6,000-square-foot store building. The first appeal involved whether or not a binding and enforceable contract had been entered into, and we held that the parties had entered into a contract that should be enforced. We remanded the case with directions to the trial judge, the Honorable Walter P. Dahl, to grant either specific performance of the contract or in the alternative to hear additional evidence regarding all of the plaintiffs' damages. The present controversy stems from the decree entered by the trial court on remand.
In its decree the trial court stated that it was appropriate to grant specific performance by ordering Oak Park to pay a sum equal to the present cost of constructing a building on the property it agreed to convey to the plaintiffs and the consequent exchange of this property improved with the new building for plaintiffs' two pieces of property. The trial court found the present cost (at the time of entry of the decree) of constructing a building within the specifications agreed upon by the parties to be $147,180. The decree went on to enumerate several terms and conditions *970 under which the specific performance of the contract was to be carried out. However, these terms and conditions are not germane to the issues raised on appeal, and it is, therefore, unnecessary to set them forth.
As a threshold issue, Oak Park has asked this court to reconsider our decision on the first appeal in which we held that a binding and enforceable contract had been entered into by and between the plaintiffs and Oak Park. Oak Park maintains that our prior decision is plainly and palpably erroneous and that we should now hold that there was no meeting of the minds or that the letter of intent sent by the plaintiffs to Oak Park on May 8, 1963, was too indefinite and incomplete to be a contract. In the alternative, Oak Park contends that it was error for the trial court to grant specific performance and that if the plaintiffs have any rights arising from the letter of intent their remedy should be limited to damages.
The plaintiffs contend that the trial court erred in not ordering Oak Park to construct the building agreed upon and in any event that $147,800 is not the cost of constructing the building bargained for by the plaintiffs. The Yonan's maintain the trial court should have ordered Oak Park to pay $218,876 as the present cost of constructing the agreed upon building. In addition, plaintiffs have filed a cross-appeal and contend that the trial court erred in not granting them complete specific performance by compensating them for all of the loss they sustained due to Oak Park's breach of contract.
 1 In regards to Oak Park's contention that our prior decision was plainly and palpably erroneous and that we should now reconsider it, we need only reiterate a well-established principle of law  the doctrine of the law of the case. In Tribune Co. v. Emery Motor Livery Co., 338 Ill. 537, 170 N.E. 772 (1929), our supreme court stated at page 541:
"The second appeal in the same case, when the judgment of reversal and remandment on the first appeal covers the entire merits of the controversy, will bring before the court to review only the proceedings had in the cause subsequently to the remandment. (Walker v. Doane, 108 Ill. 236). This result follows necessarily from the fact that an appellate court is bound by its former final decision and judgment upon the same record. (Henning v. Eldridge, supra; Sanders v. Peck, 131 Ill. 407; Washburn & Moen Manf. Co. v. Chicago Galvanized Wire Fence Co., 119 Id. 30; Central Warehouse Co. v. Sargeant, 40 Ill. App. 438; Field v. Brokaw, Id. 371)."
In Weiland Tool & Manufacturing Co. v. Whitney, 100 Ill. App.2d 116, 241 N.E.2d 533 (1968), rev'd on other grounds, 44 Ill.2d 105, 251 N.E.2d 242 (1969), which was a second appeal, the counterplaintiff argued, *971 inter alia, that the court's first decision was palpably in error as to certain matters of substantive law and that the court should re-examine the issues. The court stated at page 124:
"When there is an identity of particular issues, facts and evidence from the first to the second appeal, the decision of the former appeal is binding upon us on a second appeal, regardless of whether our former decision is right or wrong. Gillum v. Central Illinois Public Service Co., 250 Ill. App. 617."
The court in Weiland did recognize two exceptions to the doctrine of the law of the case. The first exception is when subsequent to the first appeal the supreme court makes a contrary ruling on the precise issues of law on which the appellate court had based its prior decision. The second exception allows a departure from the law-of-the-case doctrine and a finding that the prior decision was palpably erroneous, but only when the case has been remanded by the appellate court for a new trial of all the issues. The rationale for this exception is that the court would be reaching a different decision upon an appeal from a judgment entered upon a second trial. In the case presently before us, neither of these exceptions is applicable. It is, therefore, abundantly clear that when a reviewing court reverses and remands an order, judgment or decree with specific instructions as to the action to be taken by the trial court, the only question properly presented on a subsequent appeal is whether the trial court followed the mandate of the reviewing court. People v. National Builders Bank, 12 Ill.2d 473, 147 N.E.2d 42 (1957); People ex rel. John Maeras v. Chicago, Burlington & Quincy R.R. Co., 36 Ill.2d 585, 224 N.E.2d 248 (1967).
 2 In regards to whether a binding and enforceable contract had been entered into the issues, facts and evidence are identical from the first appeal in this case to the appeal presently before us. Neither of the two exceptions to the doctrine of the law of the case are applicable and therefore, we are precluded by that doctrine from reconsidering our prior decision. In any event, it is our opinion that our former decision was not plainly and palpably erroneous but rather was based upon sound principles of law. Therefore, we shall not turn to the only question properly before us, which is whether or not the trial court on remand correctly followed the mandate of this court.
As previously stated, the trial court's decree ordered Oak Park to pay the plaintiffs $147,180 as the present cost (at the time the decree was rendered) of constructing the building and that the parties exchange their respective properties. Oak Park maintains that it is error to enforce a contract for the construction of a building where a great many details have not been agreed upon and that it is equally inappropriate under *972 such circumstances to order the payment of money for the construction of the building in lieu of the construction itself. Oak Park contends that until the nature and quality of the details have been selected, it is impossible to build a building or to determine the cost of constructing a building. In addition, Oak Park maintains that the trial court's decree is palpably unfair to it in that the plaintiffs are receiving a lot improved with a new building but Oak Park is obtaining a lot with a building on it that is now 14 years old. As previously stated, the plaintiffs contend that the trial court should have ordered Oak Park to construct the building agreed upon or should have ordered Oak Park to pay $218,876 as the present cost of constructing the building.
 3 We view the decree of the trial court in this case as being a grant of specific performance as to part of the contract (the exchange of real estate) and an award of compensatory damages as to the remainder of the contract (the construction of the building). In 5A Corbin on Contracts § 1160, at 185 (1964), it is said:
"In some cases specific performance may be an available remedy as to part of a promised performance and not be available as to the remainder. This may be because such remainder is impossible of performance or is of such a character that specific enforcement would be too difficult or would be against the public interest. In these cases the court may decree specific performance of the first part, with compensatory damages as to the remainder that is unperformed."
Viewing the trial court's decree in this fashion, the question then becomes whether the decree is within the mandate we issued in our prior decision. We are of the opinion that it is.
The general rule applicable to the specific performance of building and construction contracts is well stated in 13 Am.Jur.2d Building Contracts § 112, at 105 (1964):
"As a general rule, contracts for building construction will not be specifically enforced, partly because damages are an adequate remedy at law, and partly because of the incapacity of the court to superintend the performance."
This principle is within the general rule that courts of equity apply to the specific performance of all time consuming and elaborate contracts. As stated in 71 Am.Jur.2d Specific Performance § 90, at 123 (1973):
"As a general rule, courts of equity refuse to decree the specific performance of a contract where its provisions and stipulations are so multifarious and its obligations are so continuous as to make the effective enforcement of a decree impossible, or to require constant and long-continued supervision by the court and further *973 supplemental proceedings in order to enforce the defendant's compliance with the decree and his performance of the constantly recurring duties of the contract. This is particularly true where performance will extend over a considerable period of time and include a series of acts, as is the case of a building and construction contract." (Emphasis added.)
This general position of courts of equity not to specifically enforce elaborate and time consuming contracts has been followed in Illinois. In Grape Creek Coal Co. v. Spellman, 39 Ill. App. 630 (1891), although not a case involving the exchange of real estate of a building and construction contract, the court did state the general position in this jurisdiction as to specific performance of contracts. The court stated at 632:
"[W]e see nothing to prevent the application of the general rule, that chancery will not entertain a bill to specifically enforce contracts relating to personal property; nor contracts which by their terms call for a succession of acts whose performance cannot be consummated by one transaction, and which require protracted supervision and direction." (Accord, Harley v. Sanitary District, 54 Ill. App. 337, 1894.)
There is no doubt but that the specific performance of the building and construction part of the contract at issue in this case would require a succession of acts and protracted supervision and direction by the trial court. The trial court would have to superintend Oak Park's compliance with this part of the contract and undoubtedly supplemental proceedings would be required to guarantee this compliance. It is also reasonable to infer that the hostilities and lack of cooperation which have arisen between the parties during this protracted litigation would not dissipate during the period of time required for construction.
 4 The only case that could be found that is fairly analogous factually to the case at bar is Bromberg v. Eugenotto Const. Co., 158 Ala. 323, 48 S. 60 (1908). In Bromberg, a complaint was filed for the specific performance of a contract whereby the complainant as lessee was to lease a certain amount of floor space from the lessor who was constructing the building. The complainant alleged that the manner in which the lessor was constructing the building would deprive him of a certain amount of the floor space he was to obtain. The complainant's prayer for relief requested that the contract be specifically enforced in such a manner as to allow him to obtain the bargained for floor space. The Supreme Court of Alabama characterized the issue as whether a court of equity will entertain a complaint to specifically enforce such a contract. In reaching a negative conclusion the court stated at page 325:
"In Madison Athletic Association v. Brittin, 60 N.J. Eq. 160, 46 *974 ATL. 652, in speaking of the specific performance of building contracts, it was said by the New Jersey Court: `The doctrine of the latter class is that the court will not ordinarily enforce specific performance of building contracts, not only on the ground that damages at law are generally an adequate remedy, but also on the ground of the inability of the court to see that the work is carried out.' In Wharton v. Stoutenburgh, 33 N.J. Eq. 266, it was said: `There is a class of special and exceptional contracts in which courts of equity refuse to exercise jurisdiction by way of specific performance. These are contracts having such terms and provisions that the court could not carry into effect its decree without some personal supervision and oversight over the work to be done, extending over a considerable period of time, such as agreements to repair or build, to construct works, to build or carry on railways, mines, and the like.'"
The court went on to say at page 326:
"It seems, both on reason and authority, that where the erection of the building requires the exercise of skill, judgment, and discretion, a court of equity will not assume jurisdiction for the enforcement of specific performance of a contract in such a case. There can be no doubt that the erection of the building, such as is referred to in the contract in this case, would require the exercise of `special skill, judgment, and discretion,' and would extend over a considerable period of time."
Similarly, in the case at bar specific performance of the building and construction part of the contract would involve the personal supervision of the trial court and entangle it in the continued overseeing of the work. Inevitably the construction would extend over a prolonged period of time and involve the special skill, judgment and discretion referred to in Bromberg. Upon all of the above-cited authorities, we reach the conclusion that the trial court was eminently correct in not ordering Oak Park to construct the building. The effective enforcement of such building and construction agreements is impossible due to the inability of a trial court to adequately superintend performance. Inevitably, further supplemental proceedings would be necessary, and protracted litigation would be further extended. We are not ignorant of a new and developing trend that some jurisdictions are following in regards to the specific performance of building and construction contracts. In In re Arbitration between Grayson-Robinson Stores, Inc., and Iris Construction Corp., 8 N.Y.2d 133, 168 N.E.2d 377 (1960), the Court of Appeals of New York confirmed an award for the specific performance of a building contract that had been awarded by an arbitrator. The court stated at page 138, "Modern writers *975 think that the `difficulty of enforcement' idea is exaggerated and that the trend is toward specific performance (5 Corbin, Contracts [1951 ed.], § 1172; 5 Williston, Contracts [rev. ed.], p. 3977; Restatement, Contracts, § 371, comment a)." However, it is our opinion that the traditional and well-established principal that specific performance of building and construction contracts will be denied is the better-reasoned rule of law. We espouse the view that the trial courts are not particularly well suited to supervise building construction and that denial of specific performance of such contracts promotes the goal of all litigation, finality.
 5, 6 We are also of the opinion that the trial court was eminently correct in ordering specific performance of that part of the contract which related to the exchange of the plaintiffs' and Oak Park's respective properties. In Smith v. Farmer's State Bank, 390 Ill. 374, 379-380, 61 N.E.2d 557, 560 (1945), our supreme court stated:
"It is consistently held, however, that where a written contract for sale and purchase of real estate is fairly and understandingly entered into and the provisions thereof are clear and specific, each party thereto is entitled, not as a favor but as a matter of right, to specific performance of it. (Young v. Kich, 369 Ill. 29; Voris v. McIver, 339 Ill. 340; Seglin v. Lemein, 334 Ill. 566; Schmidt v. Barr, 333 Ill. 494.) * * * The right to specific performance of a contract is not absolute but rests in the discretion of the court, which discretion is controlled, however, by settled principles of equity, and where it was fairly and understandingly entered into and no circumstances of oppression or fraud appear, equity will decree its enforcement. Miedema v. Wormhoudt, 288 Ill. 537; Adams v. Larson, 279 Ill. 268; Anderson v. Anderson, 251 Ill. 415." (Accord, Hayes v. Disque, 401 Ill. 479, 82 N.E.2d 350 (1948).)
These principles governing contracts for the sale and purchase of real estate are equally applicable to a contract for the exchange of realty. (81 C.J.S. Specific Performance § 63c (1953).) The parties in the case at bar fairly and understandingly entered into the contract, and the evidence does not disclose any circumstances of fraud or oppression. We are of the opinion that the contract made between the plaintiffs and Oak Park was one to which specific performance was an available remedy as to part of the promised performance (the exchange of the parties respective pieces of land) and not available as to the remainder, the construction of the building.
 7 We must next consider if the trial court's award of $147,800 as the present cost of constructing a building within the specifications attached to the letter of intent the plaintiffs sent to Oak Park on May 8, 1963, was proper. Oak Park maintains, as we previously stated, that where a great *976 many details have not been agreed upon, it is inappropriate to order the payment of money for the construction of a building. This is essentially an argument that a binding and enforceable contract had not been entered into, and, as previously stated, we are precluded by our prior decision in the first appeal from entertaining such a contention. In Bear v. Fletcher, 252 Ill. 206, 96 N.E. 997 (1911), the Illinois Supreme Court stated at page 218:
"While the general rule is that upon the breach of a contract for the sale and purchase of real estate the person injured thereby has the choice of remedies either to sue for specific performance or damages, and cannot, in general, obtain both in relation to the same transaction, yet the rule is also recognized that a party may have specific performance generally, and damages for acts which do not admit of a decree for specific performance. (Waterman on Specific Performance, sec. 5, and authorities cited.)"
As previously held, the part of the contract in the case at bar which required Oak Park to construct a building does not admit of a decree for specific performance, and it was, therefore, proper to compensate plaintiffs with a monetary award for Oak Park's breach of contract in lieu of ordering the construction.
 8, 9 The proper monetary award to be granted in cases where there has been a failure to commence the agreed upon construction has caused consternation in many jurisdictions. As stated in 13 Am.Jur.2d Building Contracts § 77, at 76 (1964), "Where there is a breach of contract and no construction at all by the contractor, no consistent measure of damages appears to be expressed or applied by the courts." However, in Illinois a consistent measure of damages in such situations has been expressed and applied. In Ross v. Danter Associates, Inc., 102 Ill. App.2d 354, 370, 242 N.E.2d 330, 338 (1968), the court, quoting from Bertram v. Berquist, 153 Ill. App. 43 (1910), stated the measure of damages when there has been a failure to commence the agreed upon construction as "the `* * * difference between the cost of constructing, by contract, the building the contractor agreed to put up, and the fair cost market price of erecting such building.'" In the case at bar the plaintiffs were to convey to Oak Park two parcels of land, one of which was improved with a two-story building containing 4,500 square feet, and Oak Park was to convey to the plaintiffs one parcel of land upon which Oak Park was to build a 6,000-square-foot store building. Applying the above-stated measure of damages to this contract, the proper monetary award to be granted the plaintiffs was the present cost of constructing the agreed upon building. The trial court found this to be $147,800. The amount of the proper monetary award to be granted is a question of *977 fact, and unless the trial court's determination is against the manifest weight of the evidence, it will not be disturbed upon review. After thoroughly reviewing the record, we are of the opinion that there was ample evidence to support the trial court's determination as to the present cost (at the time of entry of the decree) of constructing the agreed upon building. Therefore, we do not agree with Oak Park's contention that $147,800 was not the present cost of constructing the building, nor do we agree with the plaintiffs' contention that the trial court should have awarded them $218,876.
 10, 11 Before turning to the issues raised by the plaintiffs in their cross-appeal, one last argument of Oak Park must be considered. Oak Park maintains that the trial court's decree is palpably unfair to it in that the plaintiffs are receiving a lot improved with a new building, but Oak Park is obtaining a lot with a building on it that is now 14 years old. Oak Park maintains that had the construction of the building been completed in August of 1966, the date which the trial court found the contract was breached, the plaintiffs would have received a lot improved with a new building and Oak Park would have received a vacant lot and another lot improved with a 7-year-old building. We concur in Oak Park's analysis of the result of the trial court's decree, but this result which Oak Park denominates as palpably unfair to it is due to Oak Park's breach of contract. We believe that the ready answer is, as asserted in plaintiffs' brief, that a party to a contract cannot complain of detriment sustained as a result of it's own breach of contract.
The plaintiffs in their cross-appeal maintain that the trial court should have compensated them for the loss of the use of the property that Oak Park was to convey to them. Plaintiffs state in their brief that "Illinois courts have consistently held that a nondefaulting plaintiff is entitled to the rents and profits of property he should have owned from the date of the defendant's default." In support of their position plaintiffs cite Marx v. Oliver, 246 Ill. 316, 92 N.E. 864 (1910); Bear v. Fletcher, supra; and Fleming v. O'Donohue, 306 Ill. 595, 138 N.E. 183 (1923). The Fleming case was an appeal from a decree that ordered the specific performance of a real estate sale contract. The appellee filed a cross-appeal and alleged that the trial court had erred in refusing to order that he was entitled to the rents and profits of the premises, less the proper expenses for their maintenance and operation and interest on the purchase price, from the date the agreement was supposed to be executed to the date of entering the decree. In regards to the propriety of including rents and profits in a decree for specific performance our supreme court stated at pages 601-602:
"Such an order might doubtless have been permissible upon proper *978 showing, under the reasoning of this court in Marx v. Oliver, 246 Ill. 316, and Bear v. Fletcher, 252 Id. 206, but we consider that the allowance of such rents and profits, less costs, expenses and interest, was largely within the sound discretion of the chancellor, and under all the circumstances in the case we are not disposed to disturb his finding in that regard."
Similarly, under the facts and circumstances of the case at bar, we do not feel the trial court abused its discretion in denying the plaintiffs compensation for the loss of the use of the property that Oak Park was to convey to them.
 12 The plaintiffs also maintain that they should have been compensated for the expenses incurred in renting other property and for certain other miscellaneous expenses. We do not agree. In Baker v. Puffer, 299 Ill. 486, 132 N.E. 429 (1921), our supreme court held that rent paid by a party seeking specific performance, for other premises, after the other party should have conveyed may not be the basis for recovery. In regards to the other miscellaneous expenses, plaintiffs cite no authority to support their claims, and we find no basis upon which compensation for these expenses can be predicated.
For the reasons herein stated, the decree of the trial court is affirmed in all respects.
Affirmed.
DIERINGER, P.J., and BURMAN, J., concur.