EDWARD KENNEKE et al., Plaintiffs-Appellants, v. THE FIRST NATIONAL BANK OF CHICAGO et al., Defendants-Appellees.

First District (3rd Division)    No. 80-819

Opinion filed March 31, 1982.

Warren L. Schmidt, John J. Burns, and Sapoznick, Sheridan & Freiden, all of Chicago (Robert P. Sheridan, of counsel), for appellants.

Reuben & Proctor, of Chicago (Don H. Reuben, Thomas F. Ging, and Andrew D. Eichner, of counsel), for appellees.

PRESIDING JUSTICE WHITE delivered the opinion of the court:

This is the second appeal in this class action filed by two former employees of the Chicago American Publishing Company (company), publishers of the Chicago Today, a newspaper of general circulation in the Chicago area until 1974. In our prior opinion (65 Ill. App. 3d 10, 382 N.E.2d 309), we held that plaintiffs' amended complaint, when liberally construed, stated a cause of action. That amended complaint had alleged: that Edward H. Kenneke, Edward Waszak and the other members of the class, were employed by the company as drivers of newspaper delivery trucks; that their employment was terminated when the company ceased publishing the newspaper; that the defendants were the First National Bank of Chicago, trustee of the Chicago Newspaper Publishers' Association Union Pension Plan (plan), and members of the Pension Administrative Board of the plan; that in 1959, pursuant to a collective bargaining agreement between the union and the company, the company agreed to compensate the plaintiffs and the class by making them eligible for benefits under the plan; that each member of the class received partial compensation from the company in the form of payments to the plan; that the company agreed to and did pay large sums of money to the plan for the benefit of the plaintiffs and the class; that the trustee of the plan holds the monies which are the subject of this suit; that the plan retains the use and benefit of the payments which were made exclusively for the benefit of plaintiffs and the class; and that the plaintiffs and other members of the class have been informed that they have no interest in the plan nor rights thereunder.

On remand from this court, a second amended complaint was filed in this matter. Edward Waszak was the only named plaintiff. The first count of this complaint, in effect, restated the above allegations of the amended complaint. The second count named the Chicago Tribune Company (Tribune), as an additional party defendant, and in addition to the above alleged: that the Tribune employed all the members of the class at the time the company ceased doing business; that shortly thereafter there was a mass termination of said Class members; that the plan is funded by employer contributions made by contributing employers, including the Tribune; that by reason of the contributions to the plan made on behalf of class members and their subsequent termination, there existed an actuarial surplus in the plan; that the Tribune was credited with such surplus, and as a consequence, its contributions to the plan, made on behalf of its employees, were, for a long time, substantially reduced; and that the

Tribune has been unjustly enriched to the extent of the reductions in its obligations to the plan.

Subsequently, the defendants filed a motion for summary judgment on the ground, *inter alia*, that, as a matter of law the express terms of the plan and the collective bargaining agreement between the plaintiff's union and the Chicago Newspaper Publishers' Association, an association which included both the Tribune and the company, precluded recovery on a theory of unjust enrichment. A supporting affidavit, not contradicted by counteraffidavit, stated that plaintiff Waszak had completed 10 years, 11 months of credited service by the end of 1974, and that except for provisions dealing with payment of disability benefits not in issue here, section six of the plan, as amended, provided that a participant must have at least 20 years of credited service in order to qualify for any pension benefits. The trial court granted defendants' motion and dismissed the second amended complaint with prejudice. It is from this order that this appeal is taken.

■■ It is not disputed that plaintiff Waszak did not qualify for pension benefits under the terms of the pension plan. In fact, plaintiff's pleadings do not seek a pension under the plan, but rather seek quasi-contractual relief. The sole issue presented on this appeal is whether section 30 of the collective bargaining agreement, or section 11.2 of the pension plan entitled the defendants to summary judgment. Under section 57 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 57), summary judgment "shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (*Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 586, 272 N.E.2d 497, *cert. denied* (1972), 408 U.S. 943, 33 L. Ed. 2d 766, 92 S. Ct. 2846.) We conclude that section 30 of the collective bargaining agreement and section 11.2 of the pension plan did not entitle defendants to a judgment as a matter of law and that the trial court erred in granting their motion for summary judgment.

Section 11.2 of the pension plan provides:

"11.2 *Vested Interests*. Neither the Association, any Employer, Participant, nor the Union, nor any member of the Union, nor any person claiming by, through or under any of them, shall have any right, title or interest in or to the Pension Trust Fund, or any part thereof, excepting the right of a Participant to benefits as provided hereunder."

Section 30 of the collective bargaining agreement provides:

"Section 30. In the event of merger, consolidation or suspension of any newspaper covered by this Agreement, all regular em-

ployees having one year or more of regular employment with such newspaper who thereby are deprived of such regular employment shall receive suspension or merger pay as follows:

Employment of 1 year _____ 1 week
Employment of 2 years_____ 2 weeks
Employment of 3 years_____ 3 weeks
Employment of 4 years or more _____4 weeks."

As a preliminary matter, the parties disagree as to whether our prior holding in this case precludes us from considering section 11.2 on this appeal. Plaintiff argues that that section was urged upon this court as part of the first appeal and that we in our prior opinion held that that section was not a bar to recovery. We reject this argument on the basis of language in that opinion defining the scope of our holding:

"We also note here that we reach this holding on the basis of plaintiffs' first amended complaint and defendants' motion to strike and dismiss, neither of which set forth the actual provisions of the plan itself. Our decision is merely that the first amended complaint without an examination of the Plan states a proper cause of action on a theory of unjust enrichment; we are not passing upon how this case will be affected if either party chooses to introduce the terms of the pension fund agreement itself into evidence as this proceeding develops." (65 Ill. App. 3d 10, 11-12.)

We note that although defendants' motion to strike and dismiss plaintiffs' first amended complaint does not quote section 11.2, a copy of that section was attached to defendants' previous motion to strike and dismiss and motion for summary judgment as an exhibit. However, our prior decision was clearly based on the first amended complaint without an examination of the plan. Under the doctrine of "law of the case," an appellate court is bound by its former final decision and judgment upon the same record, subject to certain exceptions not applicable here. (*Yonan v. Oak Park Federal Savings & Loan Association* (1975), 27 Ill. App. 3d 967, 970, 326 N.E.2d 773; *Knowles Foundry & Machine Co. v. National Plate Glass Co.* (1939), 301 Ill. App. 128, 153, 21 N.E.2d 913.) Our prior opinion did not consider the effect of section 11.2 in determining that a cause of action was stated, and accordingly, we conclude that the issue of whether section 11.2 of the pension plan prevents the granting of quasi-contractual relief to plaintiff is properly before this court for determination at this time.

In holding that the first amended complaint stated a proper cause of action for unjust enrichment, we relied upon *Lucas v. Seagrave Corp.* (D. Minn. 1967), 277 F. Supp. 338, and Bernstein, *Employee Pension Rights When Plants Shut Down: Problems and Some Proposals*, 76 Harv. L. Rev. 952 (1963) (hereinafter Bernstein article). In *Lucas*, the court held:

"[W]here the substantial portion of a plan's participants are terminated and the employer benefits by recapturing his contributions, as well as by the years of employees' service at compensation less than the actual value of such service, it does not appear extreme or unfair to say that there may be a recovery on a quasi-contractual unjust enrichment theory." (277 F. Supp. 338, 346.)

The *Lucas* court reasoned:

"If a plaintiff who has breached a contract by failure to fulfill a condition may recover for the benefit he confers, it would seem equitable that employees, who failed to perform the conditions of the pension plan (continued employment until retirement) because of a group termination, should be entitled to an amount equal to the benefit conferred on an employer. The employees' failure to fulfill the condition is not wilful, indeed, it is quite involuntary. The employer is not in a position to argue that he is harmed by a non-performance of the pension conditions, in fact, he causes it. Yet the employer retains the full benefit of the employee's past service and secures favorable income tax treatment as well as the recapture of the accumulated pension credits created by forfeitures." 277 F. Supp. 338, 344-45; see Bernstein article at 963.

Although plaintiff's second amended complaint states a cause of action for unjust enrichment, recovery by him may be precluded if conditions were inserted in the pension plan or the collective bargaining agreement for the contingency of a mass termination and forfeiture of any rights to funds in the pension plan. (*Lucas v. Seagrave Corp.* (D. Minn. 1967), 277 F. Supp. 338, 345; Bernstein article at 965.) If the plan or collective bargaining agreement foresaw such a contingency there would be enrichment, but that enrichment would not be unjust because it would have been within the contemplation of the parties and, in that sense, bargained for.

■■■ We next consider whether section 11.2 of the pension plan justified the granting of summary judgment for the defendants. That section, as quoted above, provides that participants have no right, title or interest in or to the pension trust fund, except the right of a participant to benefits provided for by the plan. Bernstein states that courts have read plan provisions which explicitly negate employee rights in the plan or fund prior to full satisfaction of eligibility requirements as indications that the employees did assume all the risk of nonconformance with those requirements. (Bernstein article at 970; see *United Steel Workers Local No. 2098 v. International Systems & Controls Corp.* (10th Cir. 1977), 566 F.2d 1135.) Such provisions he says are intended "to keep the plan from becoming embroiled in garnishment proceedings and lawsuits; to protect the employee from using his retirement income in advance of retirement;

and to preclude claims by employees who quit or are involuntarily separated before achieving eligibility." (Bernstein article at 970-71.) He continues:

> "But this is not to say that they were intended to be applied in extraordinary situations of mass separations. At such a time literal enforcement of the very same provisions might be palpably unfair and defeat rather than foster plan purposes.
>
> Courts would do well, therefore, to ascertain the purpose of these provisions and interpret them in accordance with those purposes, which often are more limited than the words intimate.
> * * *
>
> All that is suggested here is that these provisions, as with the eligibility provisions themselves, be subjected to the test of actual intent, which may require parol evidence. All of these provisions should be assessed in the light of the whole transaction and relationship of the parties to discover whether they do represent a clearly expressed purpose of the parties to place the full risk of impossibility of performance upon the employee who has partially performed and is denied the opportunity to continue to do so."
> (Bernstein article at 971.)

We agree with Professor Bernstein, and hold that section 11.2, on its face and by itself, does not operate to place the full risk of lost pension benefits from mass termination on the employee. Rather, section 11.2 should be assessed in the light of the whole transaction and relationship of the parties. Accordingly, the existence of that section within the pension plan, by itself, did not justify the granting of summary judgment for defendants.

Although the parties do not cite any Illinois case which has addressed this precise issue, defendants do refer us to the *United Steelworkers* case. That case involved the pension plan of a company which ceased doing business, and concerned the rights of employees who, as of the date of the plant shutdown, had not qualified under the provisions of the pension plan for retirement benefits. The pension agreement contained a provision, paragraph 362, identical, for all practical purposes, with section 11.2[1] The court found that the unjust enrichment claim in that case was fully resolved by paragraph 362 and held that such provision defeated any

---

[1] Paragraph 362 of the Pension Agreement in *United Steelworkers* provided:
" 'No employee prior to his retirement under conditions of eligibility for pension benefits shall have any right or interest in or to any portion of any funds which may be paid into any pension trust or trusts heretofore or hereafter established for the purpose of paying pensions and no employee or pensioner shall have any right to pension benefits except to the extent provided in this Agreement. * * *'" (566 F.2d 1135, 1136.)

claim by the plaintiffs that they were entitled to a recovery under the terms of the pension agreement itself, and defeated the plaintiffs' alternative claim for recovery under quasi-contract, or *quantum meruit* based on unjust enrichment. We disagree with the holding of *United Steelworkers* to the extent that it would require us to hold that section 11.2, in and of itself, would defeat the plaintiff's cause of action, and find the reasoning of the Bernstein article more persuasive.

Next, we consider whether section 30 of the collective bargaining agreement entitled the defendants to summary judgment. Before resolving this question, we note that the parties disagree as to whether provisions of the collective bargaining agreement should be considered at all. Defendants argue that the collective bargaining agreement incorporates the plan and that those documents represent the entire agreement governing the relationship between the plaintiff's union and the company. They point to section 25 of the collective bargaining agreement and the preamble to the plan. Section 25 provides for employer contributions to the pension plan, and the preamble of the plan states:

> "WHEREAS, pursuant to the terms of a collective bargaining agreement dated August 22, 1956, and thereafter amended [dates of various Supplemental Agreements], by and between the Union and certain Employers hereunder * * * amounts have been accrued from and after June 1, 1957, for contribution to a Plan and Trust to provide retirement benefits hereinafter described; and
>
> WHEREAS, it is the intention of the employers that such Plan and Trust [be qualified for deductions under the Internal Revenue Code];
>
> NOW, THEREFORE, effective June 1, 1957, the following Plan is adopted:
> * * *."

Without deciding whether the collective bargaining agreement incorporates the plan, we conclude that it is relevant to an assessment of the whole transaction and the relationship of the parties. Indeed, plaintiff, in his second amended complaint, alleged that pursuant to a collective bargaining agreement between the company and the union, the company agreed to compensate the plaintiff and other members of the class by making them eligible for benefits under the pension plan.

■■ Section 30, as quoted above, provides for suspension pay to employees in the event of suspension of any newspaper covered by the collective bargaining agreement. Although the defendants should be allowed to show that provisions of that agreement on other subjects, such as severance pay, were designed to provide all the compensation contemplated for separated employees (Bernstein article at 974), we cannot conclude that section 30, absent such a showing, was designed to operate

as the sole relief due a terminated employee in the event of mass termination. It may be conceded that section 30 deals with the possibility of mass termination; however, that section, by itself, did not entitle the defendants to summary judgment. A contrary result would not be in conformity with the public policy of protecting employee rights under pension plans. *Anger v. Gottfried* (1975), 29 Ill. App. 3d 559, 563, 331 N.E.2d 576.

Defendants also rely on *Craig v. Bemis* (5th Cir. 1975), 517 F.2d 677, to support their position. In that case former employees brought an action against their employer after they were discharged when the company closed one of its plants, and the court held that the plaintiffs could not recover under a theory of quasi-contract because they provided for the closing of the plant "in the contractual sense." We note that *Craig* is distinguishable in that the court stated that it was bound by Minnesota law, which is contrary to *Lucas*, a case relied on in our earlier opinion.

In the instant case, we are unable to say, at this stage of the case, that the plaintiff's union and the employer parties to the collective bargaining agreement and pension plan provided for what should happen to the pension plan's funds in the event of the termination of publication of an entire newspaper.

■■ We note that the "actuarial soundness of pension funds is, absent extraordinary circumstances, too important to permit trustees to obligate the fund to pay pensions to persons not entitled to them under the express terms of the pension plan." (*Phillips v. Kennedy* (8th Cir. 1976), 542 F.2d 52, 55 n.8.) Here, the termination of the publication of the Today may be such an extraordinary circumstance as to entitle the plaintiff and the class to recover for unjust enrichment.

■■ We hold that neither section 30 of the collective bargaining agreement nor section 11.2 of the pension plan, on their faces and by themselves, entitled the defendants to a judgment as a matter of law. Accordingly, the order granting summary judgment to the defendants must be reversed and this cause must be remanded to the circuit court to take further evidence concerning the contemplation of the parties at the times they entered into, and reaffirmed, the pension plan. In so doing, that court may want to look to other provisions of the pension plan and the collective bargaining agreement, and may take other evidence to determine the actual intent of section 11.2 of the pension plan and section 30 of the collective bargaining agreement.

Reversed and remanded.

McNAMARA and RIZZI, JJ., concur.