Irven B. Johnston and Julia D. Johnston, Plaintiffs-Appellants, v. Esther Girvin, d/b/a Esther Easter School of Dancing, and Oak Lawn Community High School District 229, Defendants-Appellees.

Gen. No. 50,030.

First District, First Division.

June 30, 1965.

Edmund W. Lord, of Chicago, for appellants.

Klein and Thorpe, of Chicago (C. D. Kasson, of counsel), for Oak Lawn Community High School District Number 229, appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

Plaintiffs seek damages for injuries which occurred on June 7, 1958, while in the boys' gymnasium of the defendant Oak Lawn Community High School District 229. The court allowed the motion of defendant Oak Lawn that it be dismissed as a party defendant on the ground that on the date of the alleged occurrence it "did not have in existence any contract of insurance whereby said Defendant could be held liable in an action sounding in tort."

Plaintiffs appeal on the theory that their amended complaint alleged the existence of insurance and "further, that regardless of the existence of insurance, or indemnity, that Oak Lawn is subject to tort action and judgment."

In substance, the amended complaint alleges that plaintiffs purchased tickets to a dance recital promoted by defendant Esther Girvin, and attended the recital on June 7, 1958, at the boys' gymnasium in the Oak Lawn school. Defendant Oak Lawn provided the stands in the gymnasium for the recital. At intermission time, plaintiffs started to descend from the stands, and the stands shook and sagged, and Julia Johnston fell through a gap in the railing at the edge of the stands and was seriously injured.

Plaintiffs also alleged, on information and belief, "that a certain contract was entered into between the two defendants herein, whereby certain insurance was provided for the protection of said defendants against negligent acts, and particularly indemnifying the said

48

defendant, Oak Lawn Community High School District 229, in the renting, hiring, or loaning of its gymnasium or auditorium for hire or otherwise, and which said insurance was provided for, and intended to provide for, protection of its customers, including plaintiffs herein, from negligent acts or omissions." Plaintiffs asked judgment in the sum of $50,000, "or the maximum amount provided for under the terms of the insurance policy alleged hereinbefore."

Oak Lawn's motion to dismiss the amended complaint was supported by an affidavit, which included a copy of the rental agreement entered into by defendants Oak Lawn and Esther Girvin for the use of the boys' gymnasium, which agreement included the following clause: "The undersigned further agrees to save and hold harmless, and to reimburse the Board of Education of Community High School District Number 229 with respect to any claims, suits, attorney's fees, and any other expenses which may arise due to personal injury or property damage suffered or incurred in connection with the above use of the school facilities by the undersigned."

Plaintiffs did not file any counteraffidavits, and the trial court dismissed the amended complaint as to defendant Oak Lawn, with prejudice. Included in the record is a "Bill of Exceptions," signed by the trial judge, in which it is recited that the court "held that said contract was indemnity of the defendant School District and not insurance and that defendant School District did not have insurance coverage as a result of said indemnity, and that said defendant, Oak Lawn Community High School District No. 229 should be dismissed as a party defendant." An order was entered that there was no just reason for delaying the enforcement or appeal of the order, and plaintiffs appeal.

Initially, we note the date of the occurrence here was June 7, 1958, and prior to Molitor v. Kaneland

Community Unit Dist. No. 302, 18 Ill2d 11, 163 NE2d 89 (1959). Consequently, the instant case comes within the doctrine of school district immunity as established and construed prior to Molitor v. Kaneland, where it is said (p 26):

> "For this reason we feel justice will best be served by holding that, except as to the plaintiff in the instant case, the rule herein established shall apply only to cases arising out of future occurrences. This result is in accord with a substantial line of authority embodying the theory that an overruling decision should be given only prospective operation whenever injustice or hardship due to reliance on the overruled decisions would thereby be averted."

Therefore, we believe that the pronouncements made in Moore v. Moyle, 405 Ill 555, 92 NE2d 81 (1950), and Thomas v. Broadlands Community Consol. School Dist. No. 201, 348 Ill App 567, 109 NE2d 636 (1952), that charitable corporations and school districts are subject to tort liability to the extent that liability insurance is available to protect the charitable trust fund and the public school funds, are in point here.

In Moore v. Moyle, the court said (p 564):

> "Simply stated, the decision in the Parks case is merely that recovery is denied on the grounds of necessity for the protection of trust funds."

At p 565:

> "We are of the opinion that the exemption or immunity which has been afforded a charitable institution should go no further than to protect its trust funds from being taken to satisfy its liability for the tortious acts of its agents or servants. . . . We are of the opinion there is no justification for

50

absolute immunity if the trust is protected, because that has been the reason for the rule of absolute immunity. Reason and justice require an extension of the rule in an attempt to inject some humanitarian principles into the abstract rule of absolute immunity."

At p 566:

"It appears that the trust funds of Bradley will not be impaired or depleted by the prosecution of the complaint, and therefore it was error to dismiss it."

In Thomas v. Broadlands, where a school district was involved, the court reviewed school district immunity, and said (p 569):

"Absent the question of insurance, the law in Illinois is clear that a School District, as a quasi-municipal corporation, is not liable for injuries resulting from tort."

Referring to Moore v. Moyle, the court said (p 569):

"In that decision, the court concluded that the sole object of the doctrine of immunity of charitable corporations from suit for tort was to protect trust funds of charities from depletion through the tortious conduct of their employees and agents. The court indicated that the immunity granted to charitable corporations was not an absolute one and that such an immunity might be waived. The court concluded that there was no intention shown in the previous decisions by it to extend the immunity granted to non-trust funds of the charity, . . . ."

Also, in Thomas v. Broadlands, in considering the question as to whether "liability insurance must affect

51

the basis or the reason for immunity of quasi-municipal corporations from suit for tort in a manner substantially similar to that in which the reason for charitable immunity was so influenced," the court reasoned (p 575):

> "The only justifiable reason for the immunity of quasi-municipal corporations from suit for tort is the sound and unobjectionable one that it is the public policy to protect public funds and public property, to prevent the diversion of tax moneys, in this case school funds, to the payment of damage claims. There is no justification or reason for absolute immunity if the public funds are protected. Their protection has been the real and historical reason for the absolute immunity both elsewhere and in Illinois accorded quasi-municipal corporations, and similarly, municipal corporations in the exercise of a governmental function. Liability insurance, to the extent that it protects the public funds, removes the reason for, and thus the immunity to, suit. The reasoning of the Supreme Court in the Moore case, supra, applies with equal force to the question before us. If the public funds are protected by liability insurance, the justification and reason for the rule of immunity are removed. . . . [p 576] and when liability insurance is available to so protect the public funds, the reason for the rule of immunity vanishes to the extent of the available insurance."

■ Although the cited authorities refer to the question of whether "liability insurance" is available for the protection of public funds, we believe it is clear that the question is always one of "protection of public funds" rather than the vehicle by which it is accomplished. If the trust funds or public funds are not to be "impaired or depleted by the prosecution of

52

the complaint . . . it was error to dismiss it." Moore v. Moyle, p 566.

Examining the amended complaint in the light of the foregoing pronouncements, we find that protective insurance is alleged. However, the court held that the contract set forth in the supporting affidavit of the motion to dismiss was "indemnity" and not "insurance," and that defendant school district "did not have insurance coverage as a result of said indemnity."

■ Defendant argues that the agreement "does not contain any words specifically that Esther Easter was to indemnify appellee against its negligence and the agreement cannot be construed to include such coverage." Cited is Westinghouse Elec. Elevator Co. v. LaSalle Monroe Bldg. Corp., 395 Ill 429, 70 NE2d 604 (1946), where it is said (p 433):

> "It is quite generally held that an indemnity contract will not be construed as indemnifying one against his own negligence, unless such a construction is required by clear and explicit language of the contract."

From this defendant asserts "there was no insurance protecting Appellee against its own acts of negligence in existence at the time of the alleged occurrence so as to prevent the diminution of its trust funds by the present action."

■ We are not persuaded that this rule should be applied here. We think the agreement in clear and unequivocal terms agrees to "save and hold harmless" the school district from any claims "due to personal injury or property damage suffered or incurred in connection with the above use of the school facilities by the undersigned." This agreement is contractual security against anticipated loss, the basic element of liability insurance. Accordingly, as the instant agreement was intended to protect the public funds of a

53

school district and "to prevent the diversion of tax moneys, in this case school funds, to the payment of damage claims," it should be considered as the equivalent of "liability insurance." The doctrine of immunity should not be extended to such a case, because the reason, often expressed, "to protect public funds and public property" is removed and is nonexistent. There is no justification or reason for absolute immunity if the public funds are protected. Thomas v. Broadlands Community Consol. School Dist. No. 201, 348 Ill App 567, 109 NE2d 636.

■ It is error to dismiss an action before presentation of evidence when the pleadings indicate a possibility of recovery. (Yankey v. Oscar Bohlin & Son, Inc., 37 Ill App2d 457, 469, 186 NE2d 57 (1962).) Therefore, and prior to the hearing of evidence, we believe the agreement here should be given the same force and effect as "liability insurance," sufficient to enable plaintiffs to prosecute their action against defendant Oak Lawn and to remove the defense here "that school immunity can be justified on the protection-of-public-funds theory." Molitor v. Kaneland Community Unit Dist. No. 302, 18 Ill2d 11, 22, 163 NE 2d 89.

We conclude that the amended complaint was improperly dismissed as to defendant Oak Lawn. The order of dismissal is reversed and the matter is remanded with directions to proceed in accordance with the views expressed herein.

Reversed and remanded with directions.

BURMAN, P. J. and KLUCZYNSKI, J., concur.