GEORGE J. WOLFORD, Plaintiff-Appellee, *v.* JAMES E. KOLLS IN-VESTMENT COMPANY, INC., Defendant-Appellant.

Second District    No. 77-35

Opinion filed June 26, 1978.—Rehearing denied July 27, 1978.

Joseph E. Heaton, Jr., and Luke R. Morin, both of Dixon, Devine, Ray & Morin, of Dixon, for appellant.

John E. Miller, of Besse, Frye, Arnold & Brooks, of Sterling, for appellee.

Mr. JUSTICE NASH delivered the opinion of the court:

Defendant-seller, James E. Kolls Investment Company, appeals from the judgment of the trial court granting plaintiff-buyer, George J. Wolford, specific performance of a real estate sales contract entered into by the parties.

The subject property is a parcel of land located in Dixon, Illinois, upon which is situated a building containing a laundromat. The land and building are owned by defendant while the laundromat business and equipment are owned by a tenant, James L. Thomas. In late March 1974 the parties orally agreed that plaintiff would purchase the subject property from defendant for $55,000. Also during March, plaintiff entered into an agreement with Thomas to purchase the laundromat business and equipment for $40,000.

On April 1 plaintiff gave his real estate agent, Arnold Spangler, a check made payable to Spangler Real Estate for $5,000 as earnest money for the purchase of the real estate and Spangler notified defendant's real estate agent, George Bishop, that he had received the check. On April 24 the

parties executed a written contract under the terms of which plaintiff was to pay the sum of $5,000 upon the execution of the contract, receipt of which was acknowledged therein, and the remaining sum of $50,000 was to be paid on or before the closing date of May 1. The contract further provided that defendant was to secure written cancellation of a lease covering the premises before the closing date and that an easement was to be conveyed to plaintiff over adjoining property owned by defendant north of the subject property. The contract provided that should plaintiff fail to comply with or perform any condition or agreement therein the defendant could, at its option, declare the contract cancelled, terminated and forfeited by giving written notice thereof to plaintiff who would then have 30 days within which to comply with its terms.

On May 2 a meeting was held at the Dixon National Bank for the purpose of closing the transaction but, because defendant had not yet secured the written cancellation of the lease of the subject property, plaintiff refused to proceed with the closing. At that time plaintiff gave the $5,000 earnest money check, which Spangler had brought to the meeting, to a bank vice-president, Leo Miller, with instructions that he not release the funds to defendant or its agents until authorized to do so by plaintiff.

About two weeks later plaintiff learned that defendant had secured cancellation of the lease of the subject property. During this period he was negotiating with Thomas in an attempt to have the agreed price of the laundromat business and equipment reduced from $40,000 to $35,000, but had been unsuccessful. Defendant's real estate agent, Bishop, learned of this development and contacted plaintiff's real estate agent, Spangler, in an effort to get the transaction with defendant closed. Bishop testified he was then informed that plaintiff did not want the subject property unless he could acquire the laundromat business and equipment at the reduced price and that he was still negotiating with Thomas in that regard. In late May defendant began negotiations with third persons interested in buying the adjoining property which included, in part, the real estate which was the subject of the easement that was to be conveyed to plaintiff under the contract. In June plaintiff met with Thomas in a further attempt to have the purchase price of the laundromat business and equipment reduced, but Thomas still refused and there were no further negotiations between plaintiff and Thomas. Bishop testified that he contacted plaintiff, Spangler and plaintiff's attorney, Richard Keller, apparently after the negotiations with respect to the sale of the adjoining property were underway, and informed them that defendant was considering selling the property adjoining the subject property and that something should be done to close the transaction with defendant. Bishop testified that Keller thereafter informed him that he had spoken with plaintiff who said he was "going to forget the whole thing." On June 29,

1974, defendant did convey the adjoining property, without reservation of the easement referred to in its contract with plaintiff, to third persons and thereafter leased the subject property to Thomas for a six-year term. Plaintiff filed this suit for specific performance in June 1975.

Plaintiff testified that he did not attempt to set up another closing date with defendant after the May 2 meeting at the bank and also that he was never approached by defendant for that purpose, but that he was still interested in purchasing the subject property even after it became apparent the purchase of the laundromat business from Thomas would not go through and that he was at all times ready, willing and able to purchase the subject property.

The trial court found that plaintiff was willing to accept the property subject to the lease to Thomas without the easement or an abatement in the purchase price and then directed specific performance of the contract.

Defendant's principal contention is that plaintiff was in default under the contract by failing to make the required $5,000 downpayment and so was not entitled to specific performance. At issue is whether plaintiff's delivery of the $5,000 earnest money check to Spangler, and later to Miller, constituted compliance with the downpayment requirement. We find no merit to this contention.

■■ It is true, as defendant asserts, that neither the earnest money check nor any other money was ever actually received from plaintiff by defendant or any of its agents. However, Spangler notified Bishop, defendant's agent, of his receipt of the earnest money check; defendant acknowledged receipt of the downpayment in its execution of the contract; and no objection was ever made by defendant as to the manner plaintiff employed to fulfill the downpayment requirement until the bringing of this action. Furthermore, defendant gave no written notice to plaintiff of its election to declare the contract cancelled due to this alleged failure to pay as was required under its terms. Under these circumstances we find defendant waived any objection to the manner of payment employed by plaintiff. See *Gravelot v. Skender* (1956), 9 Ill. 2d 15, 18-20, 135 N.E.2d 756, 757-58.

Defendant further contends that plaintiff's conduct was such as to show his intention to abandon the contract and, therefore, he could not thereafter demand specific performance by defendant. With this contention we must agree.

■■ Specific performance is not a matter of right, but rests in the sound discretion of the court, to be determined from all facts and circumstances in evidence; the evidence necessary to support a decree for specific performance must be clear, explicit and convincing. (*Harper v. Kennedy* (1958), 15 Ill. 2d 46, 52, 153 N.E.2d 801, 804.) A party seeking specific

performance of a contract must show he has himself always been ready, willing and able to perform the contract on his part, and he is not entitled to a decree for specific performance if the circumstances or a course of conduct clearly show an abandonment of the contract by him. *Jones v. Dove* (1943), 382 Ill. 445, 452-53, 47 N.E.2d 447, 450; *Lasher v. Loeffler* (1901), 190 Ill. 150, 155, 60 N.E. 85, 86.

■■ The record before us indicates that plaintiff did not attempt to set up a closing to purchase the property after he learned that defendant had secured the cancellation of the lease on the subject property, the lack of which had prevented a closing on May 2. He instead pursued his efforts to secure a reduction in the price of Thomas' laundromat business and defendant's agent, Bishop, was informed that plaintiff did not want the subject property unless he could obtain the laundry business at the reduced price. Thereafter, when negotiations with Thomas broke down, defendant informed his attorney, who in turn informed Bishop, that he wanted to forget the whole deal. Apparently in reliance upon plaintiff's statements, defendant then sold the adjoining property, part of which contained the easement we have discussed, and executed a lease of the subject property to Thomas. Under these circumstances we believe that plaintiff failed to establish that he was always ready, willing and able to perform the contract on his part; rather they show an abandonment of the contract by him, and we hold the trial court abused its discretion in granting plaintiff specific performance.

For the above discussed reasons the judgment of the trial court is reversed.

Reversed.

GUILD and RECHENMACHER, JJ., concur.