ANGELA PIERSON, Plaintiff-Appellant, *v.* KATHLEEN BLOODWORTH, Defendant-Appellee.

Fifth District   No. 79-176

Opinion filed March 12, 1980.

Christopher B. Hunter and Daniel J. Mulvanny, both of Land of Lincoln Legal Assistance Foundation, of Alton, for appellant.

Owen M. Rollberg, of Granite City, for appellee.

Mr. JUSTICE KASSERMAN delivered the opinion of the court:

Plaintiff, Angela Pierson, brought a *habeas corpus* action in the Circuit Court of Madison County to compel the return of her daughter from the custody of defendant, Kathleen Bloodworth. Prior to the hearing, the trial court granted defendant leave to amend her pleadings in response to the petition so as to place before the court the issue of the

custody of plaintiff's son. At the close of proceedings the trial court granted the custody of both children to defendant. Plaintiff appeals from this order, contending that the trial court had no jurisdiction of the subject matter with respect to the son's custody and that it erred in awarding custody of the children to defendant.

During the marriage of plaintiff and Gary P. Bloodworth, Sr., two children were born, Carol E. Bloodworth and Gary P. Bloodworth, Jr., both of whom are the subject of these proceedings. A decree of divorce, filed on April 17, 1968, in the Circuit Court of Madison County, dissolved the marriage and, among other things, granted custody of Carol to plaintiff herein. Gary was not born until October 25 of that year. In December 1968, the children began to reside with their father in Granite City, Illinois. Subsequently, the father married defendant, who is plaintiff's natural sister. On March 16, 1970, a *nunc pro tunc* order was entered which modified the divorce decree by awarding custody of the children to the father, with whom they remained until his death on June 3, 1978. The children continued to live with defendant until August 19, 1978. On this day, plaintiff took the children to her home in Virden, Illinois, ostensibly for a visit of a few days duration. However, at the scheduled end of the visit plaintiff refused to return them. Plaintiff, who has since remarried and has two children by her second husband, stated that it was her intention to have the children live with her and her new family. Carol developed appendicitis during her stay with plaintiff and required hospitalization. Defendant arrived at the hospital on September 23, 1978, and obtained the child's release to her. She returned Carol to Granite City where Carol has resided prior to the commencement of this action.

On October 17, 1978, plaintiff filed a petition for writ of *habeas corpus* requesting that Carol be returned to her custody. The writ issued and a hearing was set for November 13, 1978. On the day of the hearing, defendant filed and served upon plaintiff a pleading styled "The Return of Kathleen Bloodworth," apparently contemplating such pleading to be the return required by section 12 of the act relating to *habeas corpus* proceedings (Ill. Rev. Stat. 1977, ch. 65, par. 12). In addition to answering the petition, defendant's return raised the issue of Gary's custody. Gary accompanied plaintiff to court on the day of the hearing; however, plaintiff was unaware that Gary's custody would be litigated on that date. Over plaintiff's objection, the trial court agreed to hear the issue of Gary's custody on the basis of defendant's return. However, both parties were granted leave to file appropriate pleadings after the hearing in order to bring the issue of Gary's custody before the court. At the close of the hearing, the court announced that it would award custody of both children to defendant and allow plaintiff reasonable visitation rights. A formal written opinion was filed on November 22, 1978; and seven days

later defendant filed an amended return in response to the writ of *habeas corpus*, a cross-petition for writ of *habeas corpus* relating to Gary and a petition for guardianship of the children.

Plaintiff initially urges that the trial court's order be reversed, insofar as it affects the custody of Gary, for the reason that the court did not acquire jurisdiction of the subject matter of this issue. She contends (1) that defendant's original return failed to state a cause of action with respect to Gary under the statute governing *habeas corpus* proceedings (Ill. Rev. Stat. 1977, ch. 65, par. 1 *et seq.*); and (2) that the trial court erred in granting defendant leave to amend her return and file other appropriate pleadings in an effort to bring this matter before the court.

The question before us is not whether a circuit court has the power to assume subject-matter jurisdiction over a child custody dispute in a *habeas corpus* proceeding. The power of the courts in this State to render custody decisions in such proceedings is undisputed. (*People ex rel. Lehman v. Lehman* (1966), 34 Ill. 2d 286, 215 N.E.2d 806; *Faris v. Faris* (1966), 35 Ill. 2d 305, 220 N.E.2d 210.) Instead, we must determine on the basis of the pleadings whether this issue properly was placed before the court.

■■ Section 3 of the act relating to *habeas corpus* proceedings (Ill. Rev. Stat. 1977, ch. 65, par. 3) requires that any petition for relief under the act shall identify the person in whose behalf the writ is applied for. Conversely, the return required by section 12 of the act does not permit the person upon whom the writ is served to place matters before the court which were not included in the petition. The proper vehicle by which to raise an additional custodial question would be a cross-petition for *habeas corpus*. Since the only mention of Gary's custody was made in the return, the issue therefore was not properly placed before the trial court on the basis of the original pleadings.

Plaintiff next asserts that section 37 of the act relating to *habeas corpus* proceedings (Ill. Rev. Stat. 1977, ch. 65, par. 36.1) barred the trial court from permitting defendant to file the amended return or the cross-petition for writ of *habeas corpus* seeking the return of Gary from plaintiff. This section states in part:

> "Where relief is sought under this Act and the Court determines, on motion directed to the pleadings, or on motion for summary judgment or upon trial, that the plaintiff has pleaded or established facts which entitle him to relief but that he has sought the wrong remedy, the Court shall permit the pleadings to be amended, * * * and the Court shall grant the relief to which plaintiff is entitled on the amended pleadings or upon the evidence. * * *"

Plaintiff argues that defendant's return was not subject to amendment

because by its very nature the return was incapable of stating a cause of action entitling defendant to relief.

■■ By implication, plaintiff contends that amendments to pleadings in *habeas corpus* proceedings are governed exclusively by section 37. However, plaintiff fails to take into account section 20 of the act (Ill. Rev. Stat. 1977, ch. 65, par. 20) which provides:

"The return, as well as any denial or allegation, may be amended at any time by leave of the court or judge."

We do not find section 37 to be controlling in this case. The purpose of this section is to have the remedy sought comport with the proof at trial or with the allegations of fact in the petition in the case of a hearing on a motion directed toward the pleadings. This legislative purpose is apparent because it is the remedy sought, and not the allegations of fact, which may be amended. Since the function of section 37 of the act relating to *habeas corpus* proceedings is to permit a change in the remedy sought to conform with the proofs or allegations of a pleading against which a motion is directed or which is the subject of a motion for summary judgment, we hold that it does not apply to amendments to pleadings which are made prior to a hearing on a petition or prior to hearing on such motions. Accordingly, defendant's amendment to her return and her cross-petition were not barred by section 37 of the act.

Section 20 of the act relating to *habeas corpus* proceedings governs the amendments to defendant's pleadings in this case. In ascertaining the propriety of the trial court's order in granting defendant leave to amend and leave to file her cross-petition, we are mindful that section 32 of the act (Ill. Rev. Stat. 1977, ch. 65, par. 32) states that the provisions of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 1 *et seq.*) shall apply to *habeas corpus* proceedings. Under section 46 of the Civil Practice Act, permission to file an amendment rests within the sound discretion of the trial court, and its decision ought not to be disturbed on review unless there is a showing that the court abused its discretion. (*Hastings v. Abernathy Taxi Association, Inc.* (1973), 16 Ill. App. 3d 671, 306 N.E.2d 498.) The test to be applied in determining whether there has been an abuse of discretion is whether the order permitting the amendment of the pleadings furthers the ends of justice. (*Hastings v. Abernathy Taxi Association, Inc.*; *O'Neill v. Chicago Transit Authority* (1972), 5 Ill. App. 3d 69, 283 N.E.2d 99.) Finally, it should be noted that it is the policy under the Civil Practice Act for courts to liberally exercise their discretion in favor of such amendments. *Perry v. Cronin* (1978), 61 Ill. App. 3d 418, 377 N.E.2d 1321; *Blazina v. Blazina* (1976), 42 Ill. App. 3d 159, 356 N.E.2d 164.

■■ In applying the "furtherance of justice" test to the instant case, we

hold that the trial court did not abuse its discretion in granting defendant leave to amend and leave to file a cross-petition. Courts in this State have held that a custody order which separates children is not ordinarily in their best interests. (*In re Marriage of Dow* (1978), 64 Ill. App. 3d 177, 380 N.E.2d 1174.) Defendant's amended pleadings, whereby the issue of Gary's custody was brought before the trial court, enabled the court to determine the custody of both the children and precluded consideration of the custody of each of them at separate times and by different courts, a distinct possibility if only Carol's custody were being litigated. Moreover, the amended pleadings promote judicial economy without prejudice to plaintiff by having one hearing decide the custody of the children instead of a separate *habeas corpus* proceeding for each child. The facts pertaining to Carol's custody were common to Gary's custody, and due to this fact, plaintiff was not prejudiced by the court granting leave to amend immediately prior to trial.

For the foregoing reasons we hold that defendant properly was allowed leave to amend and that her cross-petition gave the trial court subject-matter jurisdiction over the issue of Gary's custody.

Next, plaintiff contends that the trial court erred in awarding custody of the children to defendant. It is her position that under section 11—7 of the Probate Act of 1975 (Ill. Rev. Stat. 1977, ch. 110½, par. 11—7) a natural parent has a superior right to the custody of a minor child if the parent is fit and if the best interests of the child would be served by granting custody to the parent. She claims that the trial court in awarding custody failed to give proper weight to her fitness. Moreover, she asserts that defendant did not demonstrate any compelling reasons why plaintiff, as a natural parent, should not have custody of the children.

■■ It is well settled in Illinois that the best interest of the child is the proper standard for awarding custody. (*People ex rel. Edwards v. Livingston* (1969), 42 Ill. 2d 201, 247 N.E.2d 417; *Look v. Look* (1974), 21 Ill. App. 3d 454, 315 N.E.2d 623; *Eaton v. Eaton* (1977), 50 Ill. App. 3d 306, 365 N.E.2d 647; *Garrison v. Garrison* (1979), 75 Ill. App. 3d 726, 394 N.E.2d 788.) This standard is not altered by section 11—7 of the Probate Act of 1975 even though it provides that a living parent who is a fit person is entitled to the custody of the minor. In construing section 132 of the Probate Act of 1939 (Ill. Rev. Stat. 1967, ch. 3, par. 132), which provides that if a parent is dead and the surviving parent is competent to transact his own business and is a fit person, he is entitled to the custody of the child, the supreme court stated:

"* * * This right of the natural parent, as provided in the statute, must yield to the best interest of the child even though the parent is a fit person. [Citations.]" (*People ex rel. Edwards v. Livingston* (1969), 42 Ill. 2d 201, 210, 247 N.E.2d 417, 422.)

Section 132 of the Probate Act of 1939 (Ill. Rev. Stat. 1967, ch. 3, par. 132) was readopted, in substance, as section 11—7 of the Probate Act of 1975 (Ill. Rev. Stat. 1977, ch. 110½, par. 11—7); and the courts in *Garrison* and in *Eaton*, in considering controversies under section 11—7 of the Probate Act of 1975, adopted the *Livingston* court's decision that the best interest of the child is the standard to be applied in controversies such as the instant case.

Plaintiff testified at trial that she was remarried and had been living in Virden, Illinois, with her new husband and two children by the subsequent marriage, Doug, age six, and Steve, age four. She wanted custody of the children because she felt that in view of Gary P. Bloodworth, Sr.'s death, the children should reside with their mother. She stated that her husband wanted Carol and Gary as well. She related that during the 10 years the children lived with their father and defendant, she would visit them regularly once a month and sometimes twice a month. These visits would usually last from noon until dark. Plaintiff, who is deaf, was of the opinion that her handicap would not affect her ability to raise Carol and Gary. She explained that she communicated with Carol by sign language, which Gary is now learning. With respect to the period of time Carol and Gary resided with plaintiff after August 19, 1978, and prior to the commencement of this action, she stated that she was able to care and provide for the children. She did not feel that they were a disciplinary problem, and she could remember no instances where she had occasion to spank them. She was of the opinion that she and her husband could provide a good environment for the children's upbringing, noting that her family had recently relocated in Girard, Illinois, and purchased a three-bedroom house approximately a block away from a park.

On cross-examination plaintiff stated that she and her husband quarreled occasionally in the presence of Carol and Gary. When asked why Carol and Gary lived with their father immediately after the divorce while she had legal custody over them, she explained that she was not smart enough at the time to care for them and she wanted to have a good time for a few years.

Defendant testified that Carol and Gary resided with her for 10 years, and she characterized her relationship toward them as that of a mother. She mentioned that the children even refer to her as mother. In describing Carol and Gary's stay with her in Granite City during those years, she related that Carol and Gary got along very well with her two younger children who were fathered by Gary Bloodworth, Sr. Carol and Gary posed no disciplinary problems with her and she was able to talk freely with Carol about any personal problems the child might have. She took Carol to the skating rink and the park. Carol was on the junior high school track team in Granite City. While the children were living with plaintiff in

Virden, defendant said she received collect telephone calls from them two or three times a week. Carol called approximately four times a day when she was in the hospital for her appendectomy. Defendant indicated that Carol would cry during most of these calls. She noticed a change in Gary when she last saw him at school in Virden two weeks before the hearing. He appeared pale and seemed to have lost weight.

Carol and Gary were questioned by the trial judge in chambers in the presence of counsel. During Carol's interview she referred to defendant as "mom." Carol said that she called her "mom" because she had the courage to raise her. Not only did Carol express a preference for staying with defendant, but she threatened to run away if she was sent to live with plaintiff. She stated that she was treated better by defendant. She went on to say that plaintiff and her husband fought in her presence on about four occasions. During these fights, she saw plaintiff throw spoons at her husband and choke and hit him. Carol was very upset by this behavior. Furthermore, Carol indicated that she and Gary were blamed for anything that went wrong in plaintiff's home. Gary also expressed a preference for living with defendant. He was in the fifth grade at the time of trial and mentioned that he received a number of D's while attending the school in plaintiff's school district. In Granite City schools he received mostly B's, some A's and a few C's. The court observed during the interview that Gary was on the verge of tears.

■■ We need not concern ourselves here with whether the trial court gave sufficient weight to the fitness of plaintiff for the reason that irrespective of plaintiff's fitness, the court's award of custody to defendant is supported by the manifest weight of the evidence. Carol and Gary prefer to reside with defendant. The disruptive atmosphere of plaintiff's home is manifested by violent quarrels between her and her husband. These facts, together with the negative impact of uprooting the children from social ties developed over a number of years in Granite City and the deteriorating scholastic performance of Gary while living with plaintiff, are compelling reasons which justify awarding custody to defendant and militate against allowing the children to continue to live with plaintiff.

Finally, plaintiff assigns as error the failure of the trial court to appoint *sua sponte* a guardian *ad litem* for Carol and Gary. She relies on *Jines v. Jines* (1978), 63 Ill. App. 3d 564, 380 N.E.2d 440, for the proposition that a trial court on its own motion should appoint a guardian *ad litem* to represent minors who are the object of a custody battle. Although the court made such a pronouncement in *Jines*, it stated the facts of the case clearly presented a situation where the appointment of separate counsel for the child was necessary. Based on our examination of the record in the instant case, we find that the interests of Carol and Gary

were vigorously asserted and that the appointment of separate counsel was not required.

For the foregoing reasons, the judgment of the Circuit Court of Madison County is affirmed.

Affirmed.

JONES, P. J., and HARRISON, J., concur.