LESLIE B. ARNOLD *et al.*, Plaintiffs-Appellants, *v.* LEAHY HOME BUILDING CO., INC., *et al.*, Defendants-Appellees.—(LEAHY HOME BUILDING CO., INC., Third-Party Plaintiff, *v.* LESLIE B. ARNOLD *et al.*, Third-Party Defendants.)

Second District Nos. 80-61, 80-409 cons.

Opinion filed April 28, 1981.

VAN DEUSEN, J., dissenting.

Francis D. Morrisey, of Baker & McKenzie, of Chicago, and Edward J. Zulkey, Daniel J. Cheely, George H. Olsen, Neil A. Klegerman, and Edward R. Duncan, Jr., all of O'Reilley & Cunningham, of Wheaton, for appellants.

Noel C. Davis, of Banbury, Banbury & Davis, of Aurora, and Arthur F. Cichorski, of Chicago, for appellees.

Mr. JUSTICE REINHARD delivered the opinion of the court:

Plaintiffs, Leslie Arnold and his wife, brought suit against defendant, Leahy Home Building Co., Inc. (Leahy), seller, and defendant Heritage/Pullman Bank & Trust Co., legal and equitable titleholder to the property, arising out of a written contract wherein Leahy was to construct a house for Arnolds and convey them the house and lot pursuant to specified terms of the contract. Count I of the first amended complaint sought damages at law for Leahy's breach of the contract, and count II sought the equitable remedy of specific performance of the contract. On January 2, 1980, and on Leahy's motion to dismiss, the trial court dismissed by written order count II denying leave to amend that count, and dismissed count I granting leave to amend within a specified time. Plaintiffs appeal the dismissal of count II, contending that (1) the trial court erred in denying them leave to file an amended complaint seeking specific performance; and (2) the trial court erred in ruling that certain damages could not be sought as a part of plaintiffs' specific performance action. As count I is still pending in the trial court, the trial judge found no just reason to delay either the enforcement or appeal of the dismissal of count II.

Subsequent to the plaintiffs' filing of their notice of appeal on January 24, 1980, Leahy filed a motion asking the trial judge to vacate a prior order entered on April 17, 1979, which provided by agreement of

the parties that the defendant shall not convey the subject premises during the pending litigation. On April 28, 1980, the trial judge found that his order of January 2, 1980, dismissing count II was a final order terminating the agreed order of April 17, 1979. By separate appeal, No. 80-409, plaintiffs now appeal the April 28, 1980, order contending that the trial court was without jurisdiction to enter that order. Our court has consolidated those appeals. Defendant Heritage/Pullman Bank is not a party to either appeal as the primary relief sought is against Leahy.

Plaintiffs' amended complaint requested relief in two counts. In count I, plaintiffs sought to recover damages resulting from the failure of Leahy to construct properly a personal residence at the property and to convey the property to plaintiffs at the time specified in the written contract. The damages sought by plaintiffs included storage, travel, commuting and lodging expenses incurred as a result of Leahy's failure to convey the property to plaintiffs on August 25, 1978, the agreed closing date stipulated in the contract, and loss of use of moneys paid to Leahy and independent contractors as well as loss of a first mortgage financing commitment for the purchase of the property. In count II, plaintiffs sought specific performance of Leahy's promise to convey the property to plaintiffs in accordance with the contract, plus damages for incomplete and incorrectly completed construction items, delay damages, including storage, travel, commuting and lodging expenses, as well as loss of a first mortgage commitment incurred by the plaintiffs as a result of Leahy's failure to perform on time where the contract specifically provided that time was of the essence. More specifically, in their action for specific performance in count II, plaintiffs alleged:

"11. At no time prior or subsequent to August 25, 1978 did defendant ever notify plaintiffs of any request for extension of the time of closing specified in Paragraph 5 of the agreement, but to the contrary from and after April 18, 1978 repeatedly assured plaintiffs that it would be able timely to perform in accordance with the agreement.

\* \* \*

13. On August 25, 1978, and at all times thereafter, the plaintiffs were, and are now, ready, willing and able to fulfill the agreement in all respects on their part. Plaintiffs have offered to pay defendant the purchase money in cash and have otherwise duly performed all conditions of the agreement on their part.

14. On March 13, 1979, and March 23, 1979, plaintiffs, through their attorneys, notified defendant that they were ready, willing and able to proceed with the closing of the purchase of the premises subject to appropriate offsetting credits to the purchaser for those items not yet completed by the defendant and for the

damages caused by the defendant's failure to perform in accordance with the agreement. On or about March 15, 1979, defendant caused to be delivered to plaintiffs a proposed closing statement, under cover of defendant's letter dated March 15, 1979, true and correct copies of which letter and closing statement are attached hereto and made a part hereof as Exhibit B, and which letter contained the threat to terminate the agreement in the event plaintiffs refused to close the transaction on the basis of the closing statement delivered to the plaintiffs. On March 23, 1979, plaintiffs caused to be delivered to defendant's attorneys a revised closing statement setting forth those credits to which plaintiffs were entitled, a true and correct copy of which closing statement is set forth in Exhibit C attached hereto, and plaintiffs notified defendant that they were ready, willing and able to close the purchase of the premises. On or about March 27, 1979, defendant caused its letter dated March 27, 1979 to be delivered to plaintiffs, a true and correct copy of which is attached hereto and made a part hereof as Exhibit D, whereby defendant notified plaintiffs that it had elected to terminate the agreement, and that the earnest money deposited with defendant by plaintiffs was being forfeited and retained by defendant. Defendant's action is so attempting to terminate the agreement constitutes a wrongful, willful and malicious refusal to perform in accordance with the terms of the agreement to the great detriment and damage of the plaintiffs.

\* \* \*

23. The defendant has refused and still refuses to substantially perform in accordance with the agreement and to convey the premises pursuant to the agreement.

\* \* \*

25. Defendant, by his actions, has purposefully and willfully attempted to force defendant to accept the premises on terms and conditions not in accordance with the agreement and which failed to take into account and credit to plaintiffs amounts necessary to compensate plaintiffs for the damages incurred by reason of defendant's delay in completing construction of the two-story house on the premises and the amounts necessary to compensate plaintiffs for the unfinished or damaged items as set forth in page 5 of Exhibit C to the first amended complaint.

26. Defendant has willfully and wrongfully attempted to terminate the agreement pursuant to his letter dated March 27, 1979, as set forth in Exhibit D to this complaint.

27. Plaintiffs have been and remain ready, willing and able to close the purchase of the premises in accordance with the agree-

ment and the closing statement set forth in Exhibit C to this agreement."

These allegations have been set out at length since it is upon them, particularly paragraphs 13 and 14, that the trial judge in his memorandum of decision found were inconsistent allegations in verified pleadings. He ruled that paragraph 14 showed conclusively that plaintiffs were not at all times ready, willing and able to fulfill the agreement by setting unreasonable preconditions to closing. The trial judge further reasoned that in view of the verified allegations in paragraph 14, plaintiffs forfeited any action they might have had for specific performance and could not make out by repleading a sufficient cause of action for specific performance. The trial court also found that the claims for damages included in the specific performance count were not "equitable compensation" in the nature of an accounting, but were legal damages inconsistent with the relief of specific performance.

■■■ An action should not be dismissed for insufficiency at law unless it clearly appears that no set of facts could be proven under the pleadings which would entitle plaintiff to relief. (*Dangeles v. Marcus* (1978), 57 Ill. App. 3d 662, 373 N.E.2d 645; *Johnston v. Girvin* (1965), 61 Ill. App. 2d 47, 208 N.E.2d 894.) A motion to dismiss a complaint admits, for purposes of disposition of that motion, all facts well pleaded together with all reasonable inferences which can be drawn therefrom. (*Talley v. Yonan* (1979), 72 Ill. App. 3d 851, 391 N.E.2d 79; *Lucchetti v. Lucchetti* (1980), 82 Ill. App. 3d 630, 402 N.E.2d 854; *Pierce v. Board of Education* (1976), 44 Ill. App. 3d 324, 358 N.E.2d 67.) Pleadings are to be liberally construed with a view to doing substantial justice between the parties. (*Lucchetti v. Lucchetti*; Ill. Rev. Stat. 1979, ch. 110, par. 33(3).) Moreover, the court must determine if, in any event, plaintiffs would be able to amend their complaint to state a cause of action. Leave to amend should be granted unless it is apparent that even after amendment no cause of action can be stated. (*Horwath v. Parker* (1979), 72 Ill. App. 3d 128, 390 N.E.2d 72; *Miller v. Enslen* (1978), 60 Ill. App. 3d 865, 377 N.E.2d 282.) However, the decision to allow an amendment is a matter within the sound discretion of the trial court and, absent a manifest abuse of that discretion, its decision will not be disturbed on appeal. (*Whildin v. Kovacs* (1980), 82 Ill. App. 3d 1015, 1017, 403 N.E.2d 694; *Intini v. Schwartz* (1979), 78 Ill. App. 3d 575, 579, 397 N.E.2d 84.) Finally, it should be noted that the policy under the Civil Practice Act is for courts to exercise their discretion liberally in favor of such amendments. (*Pierson v. Bloodworth* (1980), 81 Ill. App. 3d 645, 649, 401 N.E.2d 1320.) The most important question is whether the amendment will be in furtherance of justice. (*Blazina v. Blazina* (1976), 42 Ill. App. 3d 159, 165, 356 N.E.2d 164.) It is against these legal principles that we test plaintiffs' complaint.

■■ An action for specific performance of a land contract is sustained by allegations of ultimate facts showing a refusal on the part of the seller to comply with the contract and a tender by the purchaser of the full amount required to entitle him to a deed pursuant to the contract. (*Yale Development Co. v. Oak Park Trust & Savings Bank* (1975), 26 Ill. App. 3d 1015, 325 N.E.2d 418; 71 Am. Jur. 2d *Specific Performance* §65 (1973).) The rule is that before specific performance will be awarded all conditions of the contract must be met by the party seeking performance. (*Mitchell v. White* (1920), 295 Ill. 135, 128 N.E. 803.) Purchasers have no right to impose conditions not contained in the contract of sale and if they do so, they fail to show they complied with the terms of the contract and are ready, able and willing to do the acts required in the contract. (*Sullivan v. Burke* (1958), 15 Ill. 2d 101, 153 N.E.2d 824.) Further, the party seeking specific performance of a contract must show he has himself always been ready, willing and able to perform the contract on his part, and he is not entitled to specific performance if the circumstances or a course of conduct clearly show an abandonment of the contract by him. *Wolford v. James E. Kolls Investment Co.* (1978), 61 Ill. App. 3d 405, 409, 377 N.E.2d 1314.

In the case at bar, plaintiffs contend on appeal that the trial court should have allowed them to amend their complaint to eliminate certain claims for offsetting damages if the court thought them improper. They further argue that the complaint establishes that they were ready, willing and able to perform and Leahy was the first party to condition performance pursuant to its closing statement and demand presented to plaintiffs on March 15, 1979. Leahy's position on appeal is that plaintiffs conditioned their tender by their demand on March 23, 1979, to close only in accordance with their revised closing statement which included offsets for damages and by their other pleadings in paragraph 14 of their complaint. Therefore, they do not stand ready, willing and able to perform according to the contract. In our analysis of these arguments we view as important the fact that this case was decided upon the pleadings without any opportunity to amend.

■■ Taking the critical allegations in paragraphs 13 and 14 which the trial judge found, as a matter of law, to be inconsistent and, in paragraph 14, a conditional tender, we focus on what was alleged. In paragraph 13 the plaintiffs clearly allege they were on the closing date, and all times thereafter, and now are ready, willing and able to fulfill the agreement on their part. This alone is obviously a sufficient pleading of tender to state a cause of action for specific performance. Next, we examine whether the specific facts alleged in paragraph 14 are such that they constitute a conditional tender which is a more specific pleading than paragraph 13 and supersede it. We do not believe that the allegations of paragraph 14

conclusively establish a conditional tender and abandonment of the original contract between the parties. Our examination of the entire complaint indicates that plaintiffs have unequivocally alleged in paragraph 23, and those facts must be taken as true, that Leahy at no time prior to or subsequent to closing has been able to perform in accordance with the terms of the contract. Moreover, plaintiffs allege in paragraph 14 that Leahy sent them a closing statement on March 15, 1979, which "contained the threat to terminate the agreement in the event plaintiffs refused to close the transaction on the basis of the closing statement delivered to the plaintiffs." It is in that context in the pleadings that plaintiffs allege they sent out their own closing statement notifying defendants that they would close pursuant to their own statement, and alleged in paragraph 27 they are ready, willing and able to close in accordance with that closing statement. The critical distinction, in our view, is whether these allegations constitute an abandonment of the contract and withdrawal of their previously pleaded unconditional tender, or whether they are factual pleadings of events prior to filing of the suit which amount to settlement attempts by the parties. Apparently there were communications from plaintiffs' attorneys to Leahy on March 13, which culminated in Leahy's threat to terminate the contract unless closed on the basis of its closing statement. Plaintiffs refused to close on that basis, but countered with their proposal. At the pleading stage, without benefit of testimony, we do not believe that plaintiffs' pleadings in the full context of paragraph 14 and the entire complaint constitute a repudiation of the contract by a conditional tender. Rather, it appears from the pleadings that both parties were negotiating in order to close this transaction. In an equity action the technical rules of tender are relaxed to prevent injustice, and the question is whether the plaintiff has made a conscientious effort to comply honestly with the contract. (*Macy v. Brown* (1927), 326 Ill. 556, 158 N.E. 216.) This is especially true where there is an unsettled account between the parties and, in such a case, it is sufficient for the plaintiff to show a willingness and ability to pay what may be found due upon an accounting. (*Lewis v. McCreedy* (1941), 378 Ill. 264, 38 N.E.2d 170; *Dodds v. Giachini* (1979), 79 Ill. App. 3d 358; 398 N.E.2d 205.) For the foregoing reasons, plaintiffs' complaint should not have been dismissed on the basis of the pleadings. This conclusion by us does not mean that the defendant is precluded from interposing in its answer the defense of cancellation of the contract by plaintiffs through their actions. Such may be a proper defense, and the trier of fact could very well conclude that plaintiffs' subsequent actions conditioned their tender.

 We turn next to the question of whether alleging damages along with specific performance in count II is fatal to plaintiffs' complaint, or whether if these damages are not allowable, they should have been

stricken and the plaintiffs allowed to amend. It is well established that a purchaser may pursue a remedy at law for damages and alternatively seek specific performance of the contract. (*Elmore Real Estate Improvement Co. v. Olson* (1947), 332 Ill. App. 475, 76 N.E.2d 204.) And, the court, having acquired equity jurisdiction, may award pecuniary compensation along with specific performance where the decree as awarded does not give complete relief (81A C.J.S. *Specific Performance* §197, at 159 (1977); 71 Am. Jur. 2d *Specific Performance* §216, at 276 (1973); see *Yonan v. Oak Park Federal Savings & Loan Association* (1975), 27 Ill. App. 3d 967, 326 N.E.2d 773.) Although such compensation is often referred to by the courts as "damages," some authorities suggest that it should more properly be considered as equitable compensation in the nature of an accounting between the parties rather than legal damages, inasmuch as the court in awarding specific performance is confirming the contract and erasing the breach. (71 Am. Jur. 2d *Specific Performance* §216, at 276 (1973).) Under this view, the compensation awarded as incident to a decree for specific performance is not for breach of contract and is therefore not legal damages. It has been stated, as the trial court noted, that:

> "The complainant affirms the contract as being still in force and asks that it be performed. He cannot have it both ways, performed and broken. It follows from this theory of the remedy by decree of specific performance that damages as such and as at law for breach of contract by the vendor, in not conveying the property at the time fixed by the contract, are not recoverable by the purchaser as supplementary to the decree, because inconsistent with the retrospective erasure of the breach." (71 Am. Jur. 2d *Specific Performance* §217, at 279 (1973).)

Accordingly, while the inclusion of the damages alleged here may not be allowable, as we shall discuss below, if they are not allowable, the court should have stricken them instead of dismissing the complaint.

■■ First, plaintiffs claim in their specific performance count that as a result of Leahy's failure to timely perform when time was of the essence, plaintiffs incurred incidental and consequential damages for storage, extra housing, additional costs of mortgage financing and commuting expenses totaling $41,535 based upon their formula of $195 per day for 213 days. The authorities cited to us by plaintiffs in support of their argument are inapposite to suits for specific performance, but are in fact cases brought at law for breach of contract. As those cases are more applicable to plaintiffs' claim for damages in count I, which is not before us, we need not consider them herein. We do not find any Illinois authority for the proposition that damages for storage, extra housing, additional costs of mortgage financing and commuting expenses are recoverable as incidental to a specific-performance suit. In *Yonan v. Oak*

*Park Federal Savings & Loan Association* (1975), 27 Ill. App. 3d 967, 978, 326 N.E.2d 773, the court specifically held that rent paid by a party seeking specific performance, for other premises, after the other party should have conveyed may not be the basis for recovery, relying on a similar holding by our supreme court in *Baker v. Puffer* (1921), 299 Ill. 486, 132 N.E. 429. The view in most other jurisdictions is to the same effect:

> "Although some courts have held that the purchaser is entitled to any special 'damage' caused by the delay, it has been held that the purchaser is not entitled to an allowance for counsel fees paid in the suit for specific performance, an allowance for the expenses of bringing his family from another state and boarding them during the delay in delivering possession, an allowance for increased rental when the purchasers were forced to remain on other premises beyond the expiration of their lease, or an allowance for the amount of interest paid on the sum borrowed to make the purchase. And in accordance with the general theory as to the nature of the allowances to the purchaser, damages for loss of an opportunity for resale were not recoverable as incidental to a decree for specific performance." (71 Am. Jur. 2d *Specific Performance* §218, at 281-82 (1973).)

There being no support for plaintiffs' contention in this regard and in view of adequate remedies available at law, we agree with the trial court's reasoning, but hold that the proper procedure would have been to strike this portion of the pleadings pursuant to Supreme Court Rule 45(1) (Ill. Rev. Stat. 1979, ch. 110, par. 45(1)).

Plaintiffs also sought in the specific performance count an offset in the purchase price for construction defects and allowances totaling $20,481. They place reliance for that position on a line of cases which hold that specific performance may be ordered with an abatement out of the purchase money for any deficiency in title, quality or quantity of the estate. (*Schiro v. W. E. Gould & Co.* (1960), 18 Ill. 2d 538, 542, 165 N.E.2d 286; *Baker v. Puffer* (1921), 299 Ill. 486, 132 N.E. 429; *Lidikevicz v. Kopala* (1925), 315 Ill. 404, 146 N.E. 461.) In *Baker*, the court stated that this rule applies in all cases where there is an encumbrance or slight defect in the quantity or quality of the estate to be sold from any cause not involving bad faith. (299 Ill. 486, 492.) While we agree that this is the law in Illinois, plaintiffs, again, have not cited to us, nor have we found any Illinois cases which have granted specific performance and damages resulting from defective construction.

Generally, the decisions allowing abatement as well as specific performance are for a slight deficiency in the quantity of property being conveyed (*Baker v. Puffer* (1921), 299 Ill. 486, 132 N.E. 429); rents on the

property during the time the contract was to be performed (*Lidikevicz v. Kopala* (1925), 315 Ill. 404, 146 N.E. 461); and costs for correcting deficiencies in a sewer system that violated city ordinances (*Schiro v. W. E. Gould & Co.* (1960), 18 Ill. 2d 538, 165 N.E.2d 279). Those cases and others following them have been generally limited to situations where there is an encumbrance or a slight defect in quality or quantity of the area contracted to be sold. (*Lundberg v. Gage* (1961), 22 Ill. 2d 249, 253, 174 N.E.2d 845.) And, more typically, the allowances are for rents and profits or rental value lost by the purchaser, with proper deductions for expenses borne by the seller during the period when the purchaser was entitled to possession. *Lidikevicz v. Kopala* (1925), 315 Ill. 404, 146 N.E. 461.

■■ Here, of course, plaintiffs claim a substantial amount of damages in excess of $20,000 for construction defects normally brought in an action at law. There is authority in at least one other State allowing specific performance along with damages resulting from delay and defective construction. (See *Billy Williams Builders & Developers, Inc. v. Hillerich* (Ky. 1969), 446 S.W.2d 280.) However, the amount of damages sought there was insignificant compared to the damages pleaded here and other jurisdictions have not followed that holding. We do not find that case and the reasoning therein persuasive. Rather, we believe that a purchaser under these circumstances has alternative and adequate remedies both at law and in equity, and as such, is not entitled to damages for construction defects under his remedy in equity. (See *Bissett v. Gooch* (1980), 87 Ill. App. 3d 1132, 409 N.E.2d 515.) For those reasons, the court should have stricken pleadings which are improper. Ill. Rev. Stat. 1979, ch. 110, par. 45(1). See also *Sherman v. Field Clinic* (1979), 74 Ill. App. 3d 21, 32, 392 N.E.2d 154.

We find therefore that the plaintiffs' allegations for damages for construction allowance and defects also should have been stricken in count II, and we remand with directions to reinstate the plaintiffs' amended complaint consistent with the views expressed herein.

In plaintiffs' second appeal, they seek to have us vacate and declare void for lack of jurisdiction the trial judge's order of April 28, 1980, which was entered after notice of appeal was filed for the first appeal, and to reinstate an agreed order of April 17, 1979.

As it is controverted in this appeal as to the legal effect of what the judge decided on April 28, 1980, we shall at this point refer to it as the trial court's "entry." That "entry" is as follows:

> "THIS CAUSE coming on to be heard on defendant LEAHY HOME BUILDING CO., INC., motion to vacate an Order of Court entered on April 17, 1979, the Court having heard argument of counsel and being fully advised in the premises, and finding it has jurisdiction of the parties and subject matter;

THE COURT finds that the Court's Judgment Order of January 2, 1980 was a final order and thereby it terminated the agreed order of April 17, 1979."

The agreed order of April 17, 1979, which was prayed for in plaintiffs' specific performance count only is as follows:

"This cause, coming on to be heard on the plaintiffs' motion, due notice having been given and the court being fully advised in the premises;

By agreement of the attorneys for plaintiffs and attorneys for defendant Leahy Home Building Co., Inc., it is hereby ordered that defendant Leahy Home Building Co., Inc. shall not transfer, convey, sell or assign, nor shall it direct or instruct any person to transfer, convey, sell or assign any interest in real property, or fixtures located therein, located at 702 Forest Glen Drive in Oak Brook, Illinois during this pending litigation."

Plaintiffs essentially argue that the April 28, 1980, "entry" was an order attempting to modify the January 2, 1980, order dismissing plaintiffs' specific performance count, and that since a notice of appeal had already been filed, the trial court was without jurisdiction to enter any further orders with respect to that count. Further, they argue that since the January 2, 1980, order said nothing about the agreed upon order of April 17, 1979, preventing the subject property from being alienated, that order, which is in the nature of a contract between the parties, is still in effect since it contained the language "shall not transfer * * * during this pending litigation * * *."

To the contrary, Leahy asserts that the trial judge entered a "finding" on April 28, 1980, that the agreed injunctive order of April 17, 1979, has already terminated, which was not an appealable order, and that without something to appeal the plaintiffs cannot overcome their neglect in failing to obtain a stay of the prior dismissal of their specific performance count. Further, Leahy contends that the agreed order of April 17, 1979, was a temporary injunction and became "functus officio" when count II was dismissed, that the words "during this pendency litigation" mean only during proceedings in the trial court, and finally that the appeal is moot since the subject property has been sold to third parties who are not parties to the appeal nor nominees of Leahy.

■■ ■ Upon filing a notice of appeal, the trial court is divested of jurisdiction to enter any order involving a matter of substance, and the jurisdiction of the appellate court attaches instanter. (*Rickard v. Pozdal* (1975), 31 Ill. App. 3d 542, 545-46, 334 N.E.2d 288.) This rule was stated by the supreme court in *City of Chicago v. Myers* (1967), 37 Ill. 2d 470, 472, 227 N.E.2d 760:

"The jurisdiction of the appellate court attaches upon the proper

filing of a notice of appeal. Thereafter, excepting certain instances not here concerned, the cause is beyond the jurisdiction of the trial court."

An exception to this rule is that the trial court may amend the record to correct matters of inadvertence or a mistake. Thus, it has been held that an appellate court should not consider such changes which are in effect making the suit a "new case." *Southland Corp. v. Village of Hoffman Estates* (1970), 130 Ill. App. 2d 311, 315-16, 264 N.E.2d 451.

■■ From our examination of the report of proceedings of the April 28, 1980, hearing, the trial judge believed he was only making a "finding" to clarify the prior order of dismissal of January 2, 1980. While we may consider his comments, we must examine the substance of the "entry" for our determination of this issue. Without question the dismissal of the specific performance count was a final order containing the required Supreme Court Rule 304(a) (Ill. Rev. Stat. 1979, ch. 110A, par. 304(a)) language, and a notice of appeal was filed on January 24, 1980, vesting jurisdiction in the appellate court. Further, we do not view the April 28, 1980, "entry" as amending the record to correct matters of inadvertence or mistake. (See *Southland Corp. v. Village of Hoffman Estates* (1970), 130 Ill. App. 2d 311, 264 N.E.2d 451.) We conclude that the litigation on the specific performance suit had terminated, and inasmuch as a notice of appeal had been filed prior to the April 28, 1980, "entry", the trial judge was without jurisdiction to act. *City of Chicago v. Myers* (1967), 37 Ill. 2d 470, 227 N.E.2d 760.

Nor do we believe that the "entry" was a ruling to which any legal significance attaches. Its plain language to us indicates it was an attempt to clarify a prior order, and as a notice of appeal had been filed, the trial judge was without jurisdiction to do this. We therefore agree with Leahy that this "entry" was superfluous and without legal consequence since it did not and could not adjudicate the rights of the parties. That being the case, this appeal must be dismissed as parties may only appeal from judgments that are final. (Ill. Rev. Stat. 1979, ch. 110A, par. 303; see *Browning v. Heritage Ins. Co.* (1974), 20 Ill. App. 3d 622, 314 N.E.2d 1.) However, in view of other substantial questions involved in these appeals, we shall address ourselves to those relevant issues to effect an orderly disposition of this case upon remand.

First, we conclude that the January 2, 1980, order dismissing the claim for specific performance with the appropriate Rule 304(a) finding by the court terminated and resolved on the merits all matters relevant to that count. Also, it is clear from our examination of the record that the agreed order preventing alienation of the subject property was prayed for in plaintiffs' specific performance count. However, we do not perceive that agreed order to be a preliminary injunction as Leahy argues since it

has none of the characteristic language which typifies injunctions nor was bond set. (See generally 21A Ill. L. & Prac. *Injunctions* (1977).) Nor is it a contract as plaintiffs assert. Cases cited to us by plaintiffs as authority for their contractual theory, *Sims v. Powell* (1945), 390 Ill. 610, 62 N.E.2d 456, and *Board of Education v. Falk* (1972), 8 Ill. App. 3d 696, 290 N.E.2d 667, are distinguishable as they are consent decrees or orders which by agreement settled a portion of what was the subject of the litigation.

It is what it says it is, an order "during this pending litigation * * *." As such, we construe it to be an interlocutory order remaining in effect during the pending litigation. Upon the case being terminated on its merits a temporary order ends. Here, the agreed order was not a resolution on the merits of the controversy, but an aid in retaining the "status quo" until the case was decided on the merits. Once the case is decided on the merits as is the case in an involuntary dismissal of the action pursuant to Supreme Court Rule 273 (Ill. Rev. Stat. 1979, ch. 110A, par. 273), the temporary order ends unless we construe the language of that order or the dismissal order of January 2, 1980, to have intended otherwise. We believe that litigation is "pending," under the facts and order before us, until the time for appeal is past. (See *In re Estate of Stith* (1970), 45 Ill. 2d 192, 258 N.E.2d 351.) In the context of the pleadings and nature of the orders entered on April 17, 1979, and January 2, 1980, we do not believe that it was intended by the court to abrogate normal prescribed procedures set forth in Supreme Court Rule 305(b) (Ill. Rev. Stat. 1979, ch. 110A, par. 305(b)), which provide for a stay during the pendency of an appeal.

■■ Lastly, it has been argued by Leahy that this appeal is now moot in that the subject property has been sold. It is well established that in the absence of a stay, an appeal is moot if possession or ownership of specific property which is the relief being sought on appeal has been conveyed to third parties. (*Horvath v. Loesch* (1980), 87 Ill. App. 3d 615, 619, 410 N.E.2d 154; *Avondale Savings & Loan Association v. Amalgamated Trust & Savings Bank* (1979), 78 Ill. App. 3d 244, 247, 397 N.E.2d 121.) Under Supreme Court Rule 305(i) (Ill. Rev. Stat. 1979, ch. 110A, par. 305(i)), the record must disclose that the third-party purchasers were not parties to or acting as nominees for parties to the action. (*Horvath v. Loesch* (1980), 87 Ill. App. 3d 615, 619; *Avondale Savings & Loan Association*, 78 Ill. App. 3d 244, 247; *Glen Ellyn Savings & Loan Assoc. v. State Bank* (1978), 65 Ill. App. 3d 916, 922-23, 382 N.E.2d 1267.) The present record does not disclose the status of the third-party purchasers. Leahy alleges in its brief that the sale was to disinterested third parties who are not parties to this appeal or nominees of defendants. Absent some showing in the record that the third parties were not acting solely as nominees, however, this court cannot say the present appeal is moot. (*Avondale Savings & Loan*

*Association*, 78 Ill. App. 3d 244, 247; *Glen Ellyn Savings & Loan Association*, 65 Ill. App. 3d 916, 922-23.) However, as that issue may be more appropriately raised before the trial court, we direct that to the trial court for its determination. (See Supreme Court Rule 305(i) (Ill. Rev. Stat. 1979, ch. 110A, par. 305(i)); *Glen Ellyn Savings & Loan Assoc. v. State Bank* (1978), 65 Ill. App. 3d 916, 926, 382 N.E.2d 1267.) A hearing should be held on this issue first since a finding of mootness would then preclude a claim for specific performance.

Accordingly, in No. 80-61 we reverse and remand to the trial court for further proceedings consistent with this opinion, and in No. 80-409 the appeal is dismissed.

No. 80-61, reversed and remanded.

No. 80-409, appeal dismissed.

NASH, J., concurs.

Mr. JUSTICE VAN DEUSEN, dissenting:

I would affirm the trial court's dismissal of count II of the amended complaint which requests specific performance and leave the parties to do battle for damages under count I.

Specific performance is not a matter of right but rests in the sound discretion of the trial court to be determined by all the facts and circumstances in evidence; the evidence necessary to support a decree for specific performance must be clear, explicit and convincing. *Wolford v. James E. Kolls Investment Co.* (1978), 61 Ill. App. 3d 405, 408, citing *Harper v. Kennedy* (1958), 15 Ill. 2d 46, 52.

A party seeking specific performance of a contract must show that he has always been ready, willing and able to perform the contract on his part. (*Wolford v. James E. Kolls Investment Co.* (1978), 61 Ill. App. 3d 405, 408-09.) Here, plaintiffs' sworn statements demonstrate that their continuing offer to perform is conditioned upon their own terms. While the plaintiffs, in paragraph 13 of count II, assert that they were and are ready, willing and able to fulfill the agreement of the parties in all respects and have offered to pay defendant the purchase money in cash, these conclusionary allegations must give way to plaintiffs' contrary specific allegations in paragraphs 14 and 27 of count II. (See *Barger v. First National Bank* (1941), 310 Ill. App. 628, 633.) These sworn allegations demonstrate that plaintiffs conditioned each and every tender to complete the contract by a demand that they be given credit in the form of a set-off of approximately $60,000. This amount included a claim for

damages of approximately $40,000. These are the same damages which the majority opinion finds improper and now strikes from count II of the complaint.

This is not a case where plaintiffs have indicated a willingness to pay such amounts as may be found due upon an accounting. (*Lewis v. McCreedy* (1941), 378 Ill. 264, 272.) In paragraph 27 of count II plaintiffs state that they are ready, willing and able to close the purchase in accordance with the agreement and their closing statement set forth in exhibit C, which contains a demand for a set-off of $62,016 including $41,535 for damages. In their prayer for relief in count II, the plaintiffs do not indicate that they would abide by an accounting of the court and pay such amount as the court would direct. Rather, the plaintiffs persist in requesting the court to order the defendant to convey the premises to them for approximately $124,000, an amount which they unilaterally determined to be due. This amount is more than $60,000 less than the purchase price called for in the contract.

While plaintiffs contend on this appeal that the trial court should have allowed them to amend their complaint to eliminate certain claims for offsetting damages if the trial court determined such damages to be improper, no such request was ever made of the trial court, nor is there any indication in the record that the plaintiffs ever sought to make such request. It is too late now for plaintiffs to return to the trial court and file an amended complaint in which they agree to pay that which the trial court should determine would be proper.

The statements contained in their complaint demonstrate that plaintiffs have imposed conditions not contained in the contract for sale in each tender of performance which they have made; by so doing they have failed to show that they are ready, willing and able to do the acts required in the contract. (*Sullivan v. Burke* (1958), 15 Ill. 2d 101, 113-14.) Where the plaintiff fails to prove that he is ready, willing and able to perform his part of the contract, it is an abuse of discretion to grant specific performance. *Wolford v. James E. Kolls Investment Co.* (1978); 61 Ill. App. 3d 405, 409.

The trial court was correct in striking count II of the amended complaint, and having given the plaintiff two opportunities in which to file a proper cause of action for specific performance, the trial court did not abuse its discretion in denying plaintiffs the right to file additional pleadings for specific performance.